IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., ET AL.<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ANTONIO M. SEGARDÍA DE JESÚS RAMOS, in his official capacity as SECRETARY OF JUSTICE,<br>ET AL.<br><br>　　　　Defendants. | Civil No.:  04-1452 (JP) |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW REQUESTING ATTORNEYS' FEES AND EXPENSES AGAINST DEFENDANTS ANTONIO M. SEGARDÍA DE JESÚS, IN HIS OFFICIAL CAPACITY AS SECRETARY OF JUSTICE; LUIS G. FORTUNO, IN HIS OFFICIAL CAPACITY AS GOVERNOR; HECTOR MORALES VARGAS, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE PLANNING BOARD OF PUERTO RICO; AND HUMBURTO MARRERO RECIO, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF REGULATIONS AND PERMITS**

TO THE HONORABLE COURT:

　　　　Pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d), and Local Civil Rule 54(a), Plaintiffs Watchtower Bible and Tract Society of New York, Inc., and Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc., respectfully submit this Motion and Memorandum of Law requesting Attorneys' Fees and Expenses, seeking recovery of attorneys' fees and expenses against all Commonwealth Defendants-Appellees, namely, Antonio M. Segardía de Jesús, in his official capacity as Secretary of Justice; Luis G. Fortuno, in his official capacity as Governor; Hector Morales Vargas, in his official capacity as Commissioner of the Planning Board of Puerto Rico; and Humburto Marrero Recio, in his official capacity as Administrator of Regulations and

1

Permits, all municipal Defendant-Appellees, namely, Municipality of Bayamon; Municipality of Caguas; Municipality of Dorado; Municipality of Gurabo; Municipality of Guaynabo; Municipality of Ponce; Municipality of San Juan; and Municipality of Trujillo Alto, all urbanization Defendant-Appellees, namely, Pacifica Homeowners Association, Inc., d/b/a Pacifica; Villa Paz, d/b/a Villa Paz, a/k/a Asociacion de Residentes de Villa Paz, and all defaulting municipalities, namely, Municipality of Santa Isabel; Municipality of Vega Baja; and the Municipality of Yauco.

On February 7, 2011, the United States Court of Appeals for the First Circuit issued its opinion and judgment which, in part, vacated the District Court's denial of declaratory and injunctive relief on Plaintiffs' as-applied constitutional claims, and vacated the Order granting attorneys' fees and costs against Jehovah's Witnesses. (Dkt. Nos. 652 and 653).

On April 1, 2011, the United States Court of Appeals for the First Circuit issued its denials of the municipalities' request for panel rehearing and rehearing en banc. (First Circuit Dkt., April 1, 2011).

On April 11, 2011, the United States Court of Appeals for the First Circuit issued the mandate. (Dkt. No. 657).

Pursuant to Local Civil Rule 54(a), this application is timely in that it is filed within fourteen days after the issuance of the mandate.

## I. SUMMARY OF FACTS

In 1987, Puerto Rico enacted Controlled Access Laws authorizing neighborhoods to erect walls and gates on public residential streets for general crime control purposes. As a result of manned and unmanned controlled-access checkpoints, Jehovah's Witnesses are routinely denied access to public streets throughout the Commonwealth. As a consequence, they are unable to share their Bible-based, door-to-door public ministry to thousands of residents.

Efforts were made by representatives of the Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc., (the legal entity used to administer the activity of the approximately 25,000 Jehovah's Witnesses in 318 congregations in Puerto Rico) and Watchtower Bible and Tract Society of New York, Inc., (the publisher of religious literature offered without cost by individual Jehovah's Witnesses) to resolve the prohibitions of access.  However, meetings with urbanizations and government officials, and testimony before the Puerto Rico legislature failed to resolve the island-wide difficulties encountered by Jehovah's Witnesses.  Thus, on May 18, 2004, Plaintiffs commenced this litigation against the Commonwealth.  (Dkt. No. 1).

On August 9, 2005, the District Court granted the Commonwealth's motion to dismiss all facial constitutional challenges to the Laws. (Dkt. No. 29) On September 8, 2006, the United States Court of Appeals for the First Circuit ordered this Court to respond to Plaintiffs' § 1292(b) motion filed on September 7, 2005.  (Dkt. No. 32)  Thus, on September 19, 2006, the District Court denied Plaintiffs' motion for interlocutory review and ordered the inclusion of municipalities and urbanizations (controlled-access residential neighborhoods) as Defendants. (Dkt. No. 34).

On April 5, 2007, Plaintiffs filed an Amended Complaint that included a representative sampling of municipal and urbanization Defendants in compliance with the District Court's direction to add "specific communities which will be affected by any decision of this court." (Dkt. No. 49)  Of the 57 municipalities and 587 controlled-access urbanizations denying access to Jehovah's Witnesses in 2007, Plaintiffs included 11 municipalities and 22 urbanizations as additional Defendants.  Id.

This Court's order resulted in vastly expanded litigation.  The inclusion of 33 additional Defendants generated thousands of pages of discovery (Dkt. No. 272-293, 304-306); the con-

ducting of over 60 depositions (Dkt. Nos. 502-506, 541-555, 557-566); the Court ordering 8 urbanization Defendants to grant Jehovah's Witnesses unfettered access to their communities (Dkt. Nos. 419, 446, 465, 468); entrance of default judgments against 3 municipalities and 9 urbanizations (Dkt .Nos. 420, 455); filing of contempt orders to enforce the default judgments (Dkt. Nos. 493, 514, 533); Defendants' motions to dismiss (Dkt. Nos. 12, 13, 15, 70, 126, 160, 168, 169, 188-190, 192-194); and Plaintiffs' oppositions thereto (Dkt. Nos. 16, 27, 116, 133, 161, 196, 266). Further, motions for summary judgment were submitted by Asociacion de Propietarios de la Urbanizacion Los Prados de Dorado, Inc., Asociacion de Residentes Estancias del Turabo, Inc., Municipality of Dorado, Municipality of Trujillo Alto, Municipality of Bayamon, Municipality of Guaynabo, Municipality of San Juan, Municipality of Caguas, and Commonwealth Roberto Sanchez-Ramos, Anibal Acevedo-Vila, Angel David Rodriguez, and Luis A. Velez-Roche. (Dkt. Nos. 120, 297, 515-525, 528, 530-532, 535, 541-555, 557-577). Plaintiffs responded to 7 motions for summary judgment. (Dkt. Nos. 139, 310, 507-508, 571, 572, 578, 579). Plaintiffs also submitted 8 Opposing Statements of Material Facts and Separate Statement of Material Facts as to Defendants (Municipality of Bayamon, Municipality of Caguas, all Commonwealth Defendants, Municipality of Dorado, Municipality of Guaynabo, Municipality of San Juan, and the Municipality of Trujillo Alto). (Dkt. Nos. 570-576). These encompassed 733 separate Statements of Facts. Id.

In addition, Rule 26 meetings and settlement conferences were held, numerous court appearances occurred, a pretrial conference was conducted, a pretrial memorandum was submitted, and trial preparations occurred for a trial that was cancelled 9 days before it was scheduled to commence. (Dkt. Nos. 385, 614).

4

On August 10, 2009, the District Court upheld the constitutional application of the controlled-access scheme as against Jehovah's Witnesses, and awarded Defendants' attorneys' fees. On February 7, 2011, the United States Court of Appeals for the First Circuit vacated "the district court's denying declaratory and injunctive relief on the as-applied claims … [and vacated] the order granting attorneys' fees and costs against the Jehovah's Witnesses." (Dkt. No. 653 at 30)  The case was then remanded to this Court for further proceedings. Thereafter, the First Circuit denied panel rehearing and en banc review.  (First Circuit Dkt., April 1, 2011).

## II.     PLAINTIFFS SHOULD BE AWARDED ATTORNEYS' FEES

a)      Plaintiffs are "Prevailing Parties"

42 U.S.C. § 1988(b) provides that a prevailing party in federal civil rights actions may recover "a reasonable attorneys' fees as part of the costs." Congress enacted this statute "in order to ensure that federal rights are adequately enforced." Perdue v. Kenny A., 130 S.Ct. 1662, 1671 (2010).

As a result of the First Circuit's decision vacating the District Court's order denying declaratory and injunctive relief on the as-applied claims, Plaintiffs are prevailing parties. They are parties "in whose favor a judgment is rendered." Buckhannon Board and Care Home, Inc., v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 603 (2001) (citation omitted).  Plaintiffs prevailed since the First Circuit rejected the Defendants' contrary assertions and held urbanization actors to be state actors since "the regulation of access to the public streets is a public function." (Dkt. No. 652 at 14)  Additionally, Plaintiffs prevailed in that the court rejected Defendants' contentions and held the municipalities liable for denials of access since "[a]uthorization of controlled access is on its face an implementation of municipal policy." Id. at 12-13.  The court also held that "the Commonwealth superintends the [controlled access] permit process." Id. at 6.  Thus, although upholding the facial constitutionality of the Commonwealth's

5

legislature's solution to "Puerto Rico's crime problems … the precedents on access to public places require fine tuning of the statute's local administration." Id. at 28.  This litigation was thus remanded to accomplish this mandate.  This "material alterations of the legal relationship of the parties' … permit[s] an award of attorneys' fees." Buckhannon, 532 U.S. 598 at 604 (citation omitted).

    Supporting the fact that Plaintiffs are prevailing parties is the First Circuit's recent decision in Hutchinson v. Patrick, No. 10-1268, 2011 WL 540538 (C.A.1 Mass. Feb. 17, 2011).  Therein the court held that "[t]o qualify as a prevailing party, … a litigant must show that a material alteration of the parties' legal relationship has taken place as a result of the litigation." Id. at *3.  That has occurred in the instant case.  The Defendants' longstanding contention that Jehovah's Witnesses can constitutionally be denied access to public streets in controlled access urbanizations has been rejected.  Additionally, the First Circuit "did reject claims that the urbanizations could be regarded as wholly private actors free of the constraints imposed by the First Amendment." Watchtower Bible and Tract Soc'y of New York, Inc., v. Antonio M. Sagardía de Jesus, 2011 WL 1226779 (1st Cir. 2011), reh'g denied.  As such, the government's disavowal of responsibility for the actions of these state actors has similarly been rejected.  In sum, there has been a material alteration in the parties' legal relationship.

    Further, it is beyond argument that Plaintiffs have demonstrated "that the alteration possesses a 'judicial imprimatur' … [as] plaintiff[s]' received a judgment on the merits.'" Hutchinson, 2011 WL 540538, *3, 4.  The First Circuit's decision holding that "the record indicates that the regime *as administered* does bear unreasonably on Jehovah's Witnesses access to public streets," ordering "the district court … to take prompt action to bring the municipalities and urbanizations into compliance with this decision," and vacating "the order granting attorneys' fees

and costs against the Jehovah's Witnesses because its premise is undermined by our decision," unquestionably is a judgment on the merits. Id. at *13, 17. (emphasis in original). Thus, Plaintiffs qualify as prevailing parties.

     b)    Attorneys' Fees should be calculated using the lodestar method

The United States Supreme Court recently affirmed the use of the lodestar method to calculate prevailing parties' attorneys' fees:

> Although the lodestar method is not perfect, it has several important virtues. First … [it] "looks to the prevailing market rates in the relevant community." … Second, the lodestar method is readily administrable … and … "objective."

Purdue, 130 S.Ct. 1662 at 1672 (citations omitted). The lodestar method—"the number of hours worked multiplied by the prevailing hourly rates … produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Id. at 1669, 1672. Thus, it is respectfully submitted that the lodestar method constitutes a reasonable attorneys' fee in this complex constitutional litigation.

     c)    The fee award should run jointly and severally against the Defendants

"Where the plaintiffs' have prevailed over more than one defendant, the court must take an additional step: it must determine whether the fee award should run jointly and severally against the defendants or, if not, what portion of the award each defendant should bear." Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 337 (1st Cir. 2008) (citation omitted). Joint and several liability is the appropriate choice given "the contours and idiosyncrasies of [this] particular case." Id.

The Defendants should equally bear liability since they "participated in every phase of the long process" of this litigation. Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 959 (1st Cir.

7

1984)  The United States Court of Appeals for the District of Columbia held that the First Circuit's opinion in Grendel's Den is "a source of guidance for jointly and severally liable defendants." Turner v. D.C. Board of Elections and Ethics, 354 F.3d 890, 896 (D.C. Cir. 2004) As a sister circuit noted:

> Indeed, the First Circuit, in citing its own authority, among others, recognized that it was not unjust to assess fees against a governmental entity stuck with enforcing a law ultimately found to be unconstitutional on its face even where it did not enact the law and where some other entity may be more culpable or causally responsible.

Id. Logically, joint and several liability also applies when a law is ultimately found to be unconstitutionally applied, and "some other entity may be more culpable or casually responsible". Id.

Furthermore, the Defendants had a consistent and united defense—specifically that the Laws were being constitutionally applied to the activity of Jehovah's Witnesses. This position has been rejected by the First Circuit. This united activity also warrants joint and several liability:

> To ensure that a private attorney general is fully compensated, '[i]t is frequently appropriate to hold all defendants joint and severally liable for attorneys' fees in cases in which two or more defendants actively participated in a constitutional violation.'"

Id. at 897 (citation omitted). Indeed, "a plaintiff's fully compensatory fee for claims centered on a set of common issues' against two or more jointly responsible defendants should be assessed jointly and severally.'" Id. at 898 (citation omitted). See also Pekarsky v. Ariyoshi, 575 F. Supp 673, 676 (D. Haw. 1983) (joint and several liability awarded where "the claim against all defendants was unitary and their involvement collective, where the prosecution of the action against all defendants was unity, and where the defendants coordinated their defense, with the State Attorney General actively participating and vigorously opposing all of plaintiffs' claims."). Therefore, the fee award should run jointly and severally against the Defendants.

8

### III.    DETERMINING REASONABLE ATTORNEYS' FEES

"A reasonable fee typically is determined through the lodestar method, which involves multiplying the hours productively spent by a reasonable hourly rate to calculate a base figure." Torres-Rivera, 524 F. 3d 331 at 336. The litigation, as greatly expanded by the District Court's ordering the inclusion of additional defendants, at its high point saw 22 attorneys representing 39 defendants. The Pretrial Memorandum reflected 19 attorneys representing 9 defendants. Fourteen Defendant-Appellees appeared before the First Circuit. In contrast to this legion of legal talent, Plaintiffs are seeking compensation for three attorneys and one paralegal involved in the representation of the Plaintiffs in this litigation.

a)    Calculation of reasonable hourly rate

The First Circuit has relied upon the United States Supreme Court's direction in holding that "'[r]easonable fees under § 1988 are to be calculated according to the prevailing market rates in the relevant community,' that is 'those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Grendel's Den Inc. v. Larkin, 749 F.2d 945 at 955. (citation omitted).

Echoing this is the First Circuit's recent observation that "[t]here is no universal market rate for legal services. Rather, "[r]easonable hourly rates will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers and other criteria. … One … rule of thumb is that the rate that a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value. … Another rule of thumb is that data evidencing the prevailing market rate for counsel of comparable skill and experience provides helpful guidance." Hutchinson, 2011 WL 540538 at *11. (citations omitted).

9

As to the prevailing market rate, Plaintiffs will only be seeking counsel fees at out-of-court rates since the amount of time actually spent in court is a small fraction of the total time expended in litigating this matter.

For Ms. Vargas Acosta, the relevant community will be Puerto Rico, where she maintains her office.  For Mr. Polidoro, who is New York based out-of-state lead counsel, Plaintiffs will seek compensation at Boston rates since this court can "take into account the prevailing rate for comparably qualified attorneys in the area of San Juan, Puerto Rico, as well as in the area of Boston, Massachusetts.  Guillemard-Ginorio v. Contreras, 603 F. Supp. 2d 301, 312 (D.P.R. 2009).  Counsel notes that rather than seek fees at New York rates, Boston rates will be utilized since the locus of the litigation is within the First Circuit. Id.  The prevailing market rate for Boston has been well established by both First Circuit and District Court jurisprudence.

As to the utilization of outside counsel, Mr. Polidoro is an in-house attorney with the Legal Department, and has specialized skill with respect to First Amendment litigation.  He was counsel of record in Watchtower Society v. Village of Stratton, 536 U.S. 150 (2002), where Watchtower successfully litigated First Amendment claims involving Jehovah's Witnesses' door-to-door free speech activity before the United States Supreme Court.  Since he has "unique competence in the subject matter of this litigation [and] brought to the case experience and recourses not easily duplicated locally … [t]his is not a case involving unreasonable or uncalled for use of distant lawyers." Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983).

Interestingly, the Commonwealth has recognized the need to retain specialized counsel for constitutional litigation despite having a Department of Justice, a Solicitor General and supporting legal staffs.  In the pending case of Igartua v. U.S., No. 09-2186 (1st Cir., Jan. 10, 2011) the Commonwealth saw the "need to retain counsel with expertise" in the complex constitutional

10

issues involved in the litigation.  Id. (Motion to Intervene of the Commonwealth of Puerto Rico at page 10 [1]FN).  In Rosie D. v. Patrick, 593 F. Supp. 2d 325, 330 (D. Mass. 2009) the District Court upheld a per hour fee of up to $425 per hour for counsel from that firm.  These firms' rates were also upheld by the First Circuit in Hutchinson, "the rates charged were pretty much the same as those received by the firm in a recently concluded public interest case." Hutchinson v. Patrick, WL 540538 at *11, C.A.1 (Mass 2011).

Turning to the instant case, lead counsel Paul D. Polidoro has extensive experience in constitutional litigation, having successfully litigated before the United States Supreme Court. (Ex. A). Local counsel Nora Vargas also has extensive experience in federal civil rights litigation. (Ex. B). Mr. Polidoro's associate, Keturah Dunne, also has extensive constitutional litigation experience. (Ex. C).

In order to establish the prevailing rate for this litigation, Plaintiffs first turn this Court's attention to the National Law Journal's "nationwide sampling of law firm billing rates" for 2009. (http://www.law.com/jsp/nlj/pub article NLJ.jsp?id=1202436055916), (Ex. D).  From that objective listing of billing rates, Plaintiffs' have pulled those 19 Boston law firms practicing in the applicable 'prevailing community,' the First Circuit. (Ex. E)  The median billing rate for partners is $495 per hour. Id. (See Palmers Day Pikney rates.)

As for Mr. Polidoro's billing rate, an attorney of his experience and expertise would command a rate no lower than $650 per hour. (Ex. F, Affidavit of Joseph L. Kociubes, Esq.). Giving that non-court hours are involved, Mr. Polidoro will instead request the median rate of $495 per hour.  In view of Ms. Dunne's legal expertise, Plaintiffs seek $250 per hour (less than $295 associate median rate for Boston).  As for Ms. Vargas, Plaintiffs seek $285 per hour (Ex.

---

[1] Of note, is that on the motion was the law firm that also represents the municipalities of Bayamon, Guaynabo, and San Juan in this litigation.

11

B). (See also Ex. Q, Affidavit of Judith Berkan). The rate for the work of paralegals is well established in this circuit. <u>See</u> <u>Guillemark-Ginonio</u>, 603 F. Supp. 2d 301 at 316. Thus, Plaintiffs seek an hourly rate of $50 for Mr. James Defibaugh's paralegal work. (Ex. G, Mr. Defibaugh's contemporaneous time records).

      b)     Calculation of hours productively spent

Plaintiffs maintained contemporaneous time records during the entire pendency of this litigation. <u>See</u> <u>Grendel's Den</u> at 949. (Exs. G, N, O, P) Attached for this Court's ease of reference are transcribed summaries from the original records. <u>See</u> <u>Gay Officers Action League v. Puerto Rico</u>, 247 F.3d 288, 297 (1st Cir. 2001) (Exs. H, I, J) Copies of the original records will be produced upon this Court's direction.

Plaintiffs' hours expended are quite modest. Despite seven years of litigation encompassing 37 parties, 152 motions, and over 60 depositions, 914 suggested findings of fact, and three applications to the First Circuit including the recent appeal (Dkt. No. 635), Mr. Polidoro expended 1527.65 hours (Ex. H); Ms. Vargas-Acosta expended 149 hours (Ex. P); Ms. Dunne expended 334.75 hours (Ex. I); and Mr. Defibaugh expended 1364.6 hours (Ex J).

      c)     Calculation of lodestar attorneys' fee amount

Plaintiffs' request the following reasonable attorneys' fees:

|  | Hours | Rate/hr | Total |
|---|---|---|---|
| Paul D. Polidoro | 1527.65 | $495 | $756,186.75 |
| Nora Vargas-Acosta | 149 | $285 | $42,465.00 |
| Keturah A. Dunne | 334.75 | $250 | $83,687.50 |
| James R. Defibaugh | 1364.6 | $50 | $68,230.00 |
| TOTAL ATTORNEY'S FEES |  |  | $950,569.25 |

12

## IV.  DETERMINING REASONABLE EXPENSES

"It is settled beyond peradventure that reasonable expenses, necessary for the prosecution of a case, are ancillary to and may be incorporated as part of a fee award under a prototypical federal fee-shifting statute." Hutchinson, 2011 WL 540538 at *12.  Thus, Plaintiffs seek recovery for expenses related to travel.

   a)   Calculation of travel expenses

"We hold, without serious question, that reasonable costs and expenses for travel … can be recovered in a fee-shifting proceeding without regard to the limitations contained in 28 U.S.C. § 1920." Id. at 31.  See also, Attrezzi, LLC v. Maytag Corp., 436 F.3d 32 (1st Cir. 2006); Palmigiano v. Garrahy, 707 F.2d 636 (1st Cir. 1983) ("certain out-of-pocket costs incurred by the plaintiffs' attorneys, including transportation, lodging, parking, food, … [are] reasonable and necessary attorneys' expenses … allowable under [42 U.S.C. § 1988]")[2].  Thus, Plaintiffs can recover travel and related expenses as part of the attorneys' fee award pursuant to 42 U.S.C. § 1988.

Transportation, Accommodation, and Meals

|  | Total |
|---|---|
| Paul D. Polidoro (Ex. K) | $10,644.44 |
| James R. Defibaugh (Ex. L) | $ 7,883.64 |
| Edward J. Blakely (Expert) (Ex. M) | $ 1,815.34 |
| TOTAL | $20,343.42 |

---

[2] Given the First Circuit's ruling that "each side shall bear its own costs," Plaintiffs have not included costs such as deposition and interpreter expenses. (Dkt. No. 652 at 30).  However, travel and related expenses are nonetheless, properly recoverable as part of the attorneys' fee award.

## CONCLUSION

For the reasons set forth, Plaintiffs request an award of $970,912.67 ($950,569.25 in attorney fees plus $20,343.42 in expenses).

                                        Respectfully submitted,

                                        <u>s/Paul D. Polidoro</u>
                                        Paul D. Polidoro

                                        <u>s/Nora Vargas Acosta</u>
                                        Nora Vargas Acosta

# ADDENDUM TO MOTION

## TABLE OF CONTENTS

**EXHIBITS**

| | | |
|---|---|---|
| 1. | Affidavit of Paul D. Polidoro | A |
| 2. | Affidavit of Nora Vargas | B |
| 3. | Affidavit of Keturah A. Dunne | C |
| 4. | *New York Law Journal* 2009 Rates | D |
| 5. | Boston Median Rates | E |
| 6. | Affidavit of Joseph L. Kociubes, Esq. | F |
| 7. | Contemporaneous Time Records—James R. Defibaugh | G |
| 8. | Summary of Time Sheets—Paul D. Polidoro | H |
| 9. | Summary of Time Sheets—Keturah A. Dunne | I |
| 10. | Summary of Time Sheets—James R. Defibaugh | J |
| 11. | Travel for Paul D. Polidoro | K |
| 12. | Travel for James R. Defibaugh | L |
| 13. | Travel for Expert, Edward J. Blakely | M |
| 14. | Contemporaneous Time Records—Paul D. Polidoro | N |
| 15. | Contemporaneous Time Records—Keturah A. Dunne | O |
| 16. | Contemporaneous Time Records—Nora Vargas | P |
| 17. | Affidavit of Judith Berkan, Esq. | Q |

In San Juan, Puerto Rico, this 25th day of April, 2011.

Respectfully submitted,

s/ Paul D. Polidoro_____
Paul D. Polidoro
Associate General Counsel
Legal Department
Watchtower Bible and Tract
  Society of New York, Inc.
100 Watchtower Drive
Patterson, NY 12563
E-mail:  ppolidor@jw.org
Telephone:  (845) 306-1000
Facsimile:  (845) 306-0709

Trial Counsel for Plaintiffs Watchtower Bible and Tract Society of New York, Inc., and Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

s/ Nora Vargas Acosta
Nora Vargas Acosta, Esq.
USDCPR NO.: 201206
  *Local Counsel*
First Federal Building
Muñoz Rivera Avenue 1056, Suite 1004
Río Piedras, PR  00927
Telephone:  (787) 751-7485
Facsimile:  (787) 758-7485

# CERTIFICATE OF SERVICE

      I hereby certify that on April 25, 2011, I electronically filed the foregoing Plaintiffs' Motion Requesting Attorneys' Fees and Expenses Against Defendants with the Clerk of the Court using the CM/ECF system, which will send notification to the attorneys of record.

      At San Juan, Puerto Rico, April 25, 2011.

                          s/ Paul D. Polidoro
                          Paul D. Polidoro
                          Associate General Counsel
                          Legal Department
                          Watchtower Bible and Tract
                            Society of New York, Inc.
                          100 Watchtower Drive
                          Patterson, NY 12563
                          E-mail: ppolidor@jw.org
                          Telephone: (845) 306-1000
                          Facsimile: (845) 306-0709

                          Trial Counsel for Plaintiffs Watchtower Bible and Tract Society of New York, Inc., and Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.