IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**WATCHTOWER BIBLE TRACT SOCIETY OF NEW YORK, INC., et al.,**

    Plaintiffs,

    v.

**MUNICIPALITY OF SANTA ISABEL, et al.,**

    Defendants.

Civil No. 04-1452 (GAG)

## CERTIFICATION TO THE PUERTO RICO SUPREME COURT

This case was originally filed on May 18, 2004 by Watchtower Bible Tract Society of New York and the Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc. ("Plaintiffs"), against the Commonwealth, numerous state and municipal officials, municipalities, and urbanizations ("Defendants"), seeking declaratory judgment regarding the constitutionality of the Access Control Law, P.R. Laws Ann. tit. 23, §§ 64-64h (2008) (the "Law"). Plaintiffs argued the Law was unconstitutional both facially and as-applied to Jehovah's Witnesses who attempted to access gated urbanizations for the purpose of expressing their religious beliefs. Plaintiffs' facial challenge to the Law was dismissed by the district court. Watchtower Bible and Tract Soc'y of New York v. Sanchez Ramos, 389 F. Supp. 2d 171 (D.P.R. 2005). Upon the parties' cross-motions for summary judgment, the district court ruled the Law to be constitutional as-applied to Plaintiffs. Watchtower Bible and Tract Soc'y of New York v. Sanchez Ramos, 647 F. Supp. 2d 103 (D.P.R. 2009). On appeal, the United States Court of Appeals for the First Circuit affirmed the dismissal of Plaintiffs' facial challenge, but vacated and remanded the district court's ruling that the Law was constitutional as-applied to Plaintiffs. Watchtower, 634 F.3d 3 (1st Cir. 2011) (Appendix 1).

The district court held a remand hearing on January 31, 2012 and issued an order the following day. (See Docket No. 710, Appendix 2.) In essence, the order required municipal defendants to: (1) ensure that all controlled access urbanizations with manned gates be instructed as to the right of entry for all Jehovah's Witnesses and to certify action plans that will allow access

to any Jehovah's Witness when such access is improperly denied; (2) submit an action plan detailing the procedures that will allow Jehovah's Witnesses to gain access to urbanizations with unmanned gates; and (3) require a manned gate for all urbanizations seeking a controlled access permit in the future, unless the urbanization can demonstrate a special justification for not providing a manned gate. (See Civil No. 04-1452, Docket No. 710.) Judgment has been entered and the court has retained jurisdiction for enforcement purposes. (See Docket No. 718.)

As evidenced by the First Circuit's opinion and order, as well as this court's order, there is a constitutional distinction between manned and unmanned controlled access gates under the United States Constitution. Manned gates have been deemed constitutional under both the Constitutions of Puerto Rico and the United States. See Asociacion Pro Control de Accesso Calle Maracaibo, Inc. v. Cardona Rodriguez, 144 D.P.R. 1, Offic. Trans. (1997) (upholding the constitutionality of the Access Control Law under the Puerto Rico Constitution). The issue regarding manned gates is currently being resolved by requiring municipal defendants to submit action plans that ensure Jehovah's Witnesses be allowed unfettered access through manned gates, and to detail the procedure for any instance in which Jehovah's Witnesses are denied access, that includes sanctions for any non-complying urbanization. (See e.g., Civil No. 04-1452, Docket No. 774.) Many Defendants have filed action plans in compliance with the court's orders that are satisfactory to the court and to Plaintiffs. (See e.g., Civil No. 04-1452, Docket Nos. 728, 731 & 742.) The remaining Defendants are currently working towards adopting similar action plans. Therefore, as to manned gates, this case has been resolved.

However, a much thornier and complex question is on the horizon with the use of unmanned gates. At the outset, this court notes the instant issue is unique to Puerto Rico due to the provisions of the Puerto Rico Civil Code that mandate all roads be maintained as public property. See P.R. Laws Ann. tit. 31, § 1025[1]; Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedres,

---

[1] Numerous provisions in The Civil Code speak to the public nature of roads. Section 1024 states, "the following are things of the public domain: Those intended for public use, as roads, canals, rivers, streams and other of a like nature." See P.R. Laws Ann. tit. 31, § 1024. Section 1025 states, "The property of public use in Puerto Rico and the towns thereof comprises the

**Civil No. 04-1452 (GAG)**     3

134 D.P.R. 181, Offic. Trans. (1993) ("[W]e must point out that under our current body of law, streets constitute property intended for public use, and that we have considered them public forums for freedom of expression purposes."); Maracaibo, 144 D.P.R. 1, Offic. Trans. at 28 ("Restrictions of third-party rights must be kept to a minimum, without forgetting that the only thing the law authorizes is to control the traffic of motor vehicles and the public use of certain residential public roads.").

The First Circuit has ruled that, in certain narrowly-defined instances, unmanned gates are constitutional under the United States Constitution. See Watchtower, 634 F.3d at 13 ("A regime of locked, unmanned gates completely barring access to public streets will preclude all direct communicative activity by non-residents in traditional public forums, and, absent a more specific showing, cannot be deemed 'narrowly tailored.'") The United States Constitution acts as a floor for constitutional protections, but state constitutions may provide for stronger and broader protections. See e.g., Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos, 2000 P.R.-Eng. 569, 924, 150 D.P.R. 924, 949 (2000); López Vives v. Policía de P.R., 118 D.P.R. 219, 226–227; 18 P.R. Offic. Trans. 264, 273 (1987) ("Our Constitution recognizes and grants some fundamental rights with a more global and protective vision than does the United States Constitution."). In reviewing the pertinent precedent from the Supreme Court of Puerto Rico,[2] this court notes the constitutionality of unmanned gates has never been ruled upon by the Court. See Maracaibo, 144 D.P.R. 1, Offic. Trans. at 23 ("In strict legality, we abstain from making pronouncements over those systems that do no have a guard in one of its vehicular entrances."). In familiarizing itself with the precedent from the Puerto Rico Supreme Court, this court questions

---

Commonwealth and local roads, the squares, streets, fountains and public waters, walks, and public works for general use, paid for by the said towns or from the Treasury of Puerto Rico. All other property, possessed by either the Commonwealth of Puerto Rico or the municipalities thereof, is common property for the use of the general and municipal governments (bienes matrimoniales), and shall be governed by the provision of this Code. See P.R. Laws Ann. tit 31, § 1025.

[2] The court notes the scope of its research is limited to those cases for which English translations are available. There may be untranslated authority from the Supreme Court of Puerto Rico that this court cannot rely upon, but may be helpful in reaching the ultimate legal conclusion.

whether the Law contemplates the use of unmanned controlled access gates, and whether the implementation and use of such gates is constitutional under the Commonwealth's constitution. With an issue as important as this, and one that garners such public attention, it is no surprise the Puerto Rico Supreme Court has granted *certiorari* multiple times over the life-span of the Law.

In Caquías, the Court reiterated the public nature of the roads and maintained that all residents, even those opposed to creating a controlled access urbanization, have exactly the same rights as those who supported the creation of the controlled access area. See Caquías, 134 D.P.R. 181, Offic. Trans. Later, in Maracaibo, the Court stated,

> [I]f any regulation approved by any residents' association violates constitutionally protected rights, the same will be considered null and void. The regulations approved by virtue of the delegated power can neither be onerous nor unreasonable. Restrictions of third-party rights must be kept to a minimum, without forgetting that the only thing the law authorizes is to control the traffic of motor vehicles and the pubic use of certain residential public roads . . . We emphasize that the Law does not allow to prohibit the access indiscriminately.

Maracaibo, 144 D.P.R. 1, Offic. Trans. at 27-28. The Court further stated that the Law is constitutional, "as long as in its application non-resident citizens are not restricted indiscriminately from accessing the public roads of the communities. . . ." Id.

Finally, in Nieves v. A.M. Contractors, Inc., 166 D.P.R. 399, Offic. Trans. (2005), the Court reaffirmed the constitutionality of the Law, but again delineated restrictions on its ability to restrict public access to urbanizations for lawful purposes, such as access to schools, churches, public transportation and commercial establishments. See Nieves, Offic. Trans. at 3. In that opinion, the Court emphasized that the right to privacy consecrated in Article II, Section 8 of the Bill of Rights of the Puerto Rico Constitution is of the "utmost importance and of the highest rank within the framework of our constitutional rights," and applies to those entering urbanizations through access gates. See id. at 7. The Nieves Court, in summarizing Marcaibo, stated that "At no time may access to controlled streets be denied for the exercise of constitutionally protected activities involving freedom of expression, freedom of association, and freedom of religion, among others." See id. at 10. Through these precedents, the Court demonstrates its commitment to ensuring all public roads, regardless of controlled access gates, be open and available for all constitutionally protected

activities. Any indiscriminate prohibition on these activities, such as erecting a permanent road block (e.g., an unmanned controlled access gate), has been discussed as a violation of the Law and/or the Puerto Rico Constitution. See id. at 11; Maracaibo, 144 D.P.R. 1, Offic. Trans. at 38-41.

The initial query is whether the Law allows for unmanned control access gates. As the Court stated in Maracaibo, "We emphasize that the Law does not allow to prohibit the access indiscriminately." See Maracaibo, 144 D.P.R. 1, Offic. Trans. at 28. The use of unmanned control access gates, seemingly, indiscriminately prohibits public access to the public roads. It is unclear if the law was passed in contemplation of the use of unmanned access control gates or if the use of such gates began as a result of the passage of the law. Notwithstanding, it is possible that theLaw itself does not provide for the use of unmanned access control gates.

The present action requires the court to analyze whether the use of such gates unconstitutionally intrudes upon Jehovah's Witnesses freedom of religion and religious expression. The freedom of religion and the right to religious expression is a pillar of our society's foundation. See Jones v. City of Opelika, 319 U.S. 105, 121 (1943) ("None of the provisions of our Constitution is more venerated by the people or respected by legislatures and the courts than those which proclaim for our country the freedom of religion and expression."). This right is deeply entrenched in both the United States Constitution, as well as the Puerto Rico Constitution. See U.S. CONST. Amend. I; P.R. CONST. Art. II § 2. Freedom of religion and that of religious expression are considered fundamental rights under the Puerto Rico Constitution. See P.R. Const. Art. II § 2 ("No law shall be made respecting an establishment of religion or prohibiting the free exercise thereof. There shall be complete separation of church and state."). This provision protects not only the ability of Jehovah's Witnesses to freely practice their religion, but protects their ability to freely express their religious beliefs. See id. Certainly Jehovah's Witnesses have the right to practice and express their religion, but it is just as clear that the state legislature has the right and ability to pass laws aimed at protecting its citizenry and reducing crime.

In addition to the above precedent, the Puerto Rico Constitution embodies the right to freedom of movement for all individuals that is separate and distinct from other fundamental rights, such as the freedom of religion. See Maracaibo, 144 D.P.R.1, Offic. Trans. at 29-30. The Court

**Civil No. 04-1452 (GAG)**                     6

held that the Puerto Rico Constitution, as well as the Civil Code, acknowledges the "right to the freedom of movement or to move about freely through the public roads has been recognized as a right with self-value, and not only as a necessary one for the exercise of others that are constitutionally guaranteed." See id.  However, it is unclear to this court whether the Court meant the Puerto Rico Constitution provides for a broader liberty interest than the U.S. Constitution in this context because the Court cited federal precedent to support this proposition. See id. (citing Papachristou v. City of Jacksonville, 405 U.S. 156 (1972); Hague v. Committee for Industrial Organization, 307 U.S. 496 (1939)). In Nieves, the Court more forcefully stated, "There is no doubt, therefore, that in addition to the right to enjoy their property, [plaintiffs] have a liberty right to freely traverse public thoroughfares" and relied solely upon the Puerto Rico Constitution and prior Puerto Rico Supreme Court precedent, rather than federal precedent. See Nieves, Offic. Trans. at 13-14.

Based on the foregoing precedent, this court finds itself in the position of being asked to resolve an important issue of state law, that to date has been unanswered by the state courts. The public policy implications involved in answering this question will have serious and wide-spread ramifications on the law, as well as the multitude of urbanizations that currently operate unmanned controlled access gates.  The court believes, based on the principles of federalism and comity between the federal and state courts, the most respectful course of action is to certify this question to the Honorable Justices of the Puerto Rico Supreme Court.  In doing so, the court is cognizant that federalism requires the court to attempt to resolve the controversy without invalidating local laws if at all possible.  See Bond v. United States, 131 S.Ct. 2355, 2364 (2011) (discussing how the concept of federalism gives the states the right and ability to be responsive to the needs of the local citizenry by allowing the states to provide additional rights to the individual, while at the same time protecting individuals' rights from impermissible state action).  As this local law has been heavily discussed and refined by the Puerto Rico Supreme Court, it is with great deference that this court certifies the following question to the able Justices of the Supreme Court of Puerto Rico:

> **Does the Access Control Law, P.R. Laws Ann. tit. 23, §§ 64-64h, provide for the use of unmanned control access gates, and if so, is the use of such gates constitutional under the Constitution of the Commonwealth of**

**Civil No. 04-1452 (GAG)**     7

**Puerto Rico?**

Resolution of the above issue under Commonwealth law may dispose of the *sole remaining federal constitutional controversy in this case*. Should the Puerto Rico Supreme Court find that the use of unmanned gates violates Puerto Rico law or is unconstitutional , then this court will not have to implement an island-wide remedy under federal law.

The Clerk of Court shall transmit this certification to the Clerk of the Commonwealth Supreme Court pursuant to P.R. Laws Ann. tit. 4, app. XXI-A, 25 and shall include a certified copy of the opinion and order issued by the United States Court of Appeals for the First Circuit on February 7, 2011 (Docket No. 652) as Appendix 1, as well as this court's order dated February 1, 2012 (Docket No. 710) as Appendix 2.

**SO ORDERED**.

In San Juan, Puerto Rico this 18th day of June, 2012.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge