IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WATCHTOWER BIBLE TRACT SOCIETY OF NEW YORK, INC., ET AL., | |
| Plaintiff, | CIV. NO.: 04-1452 (GAG) |
| v. | |
| MUNICIPALITY OF SANTA ISABEL, ET AL., | |
| Defendants. | |

## ORDER SUMMARIZING THE LAW AND COURT ORDERS REGARDING THE RIGHT OF JEHOVAH'S WITNESSES TO ACCESS PUBLIC STREETS IN GATED COMMUNITIES IN PUERTO RICO

The Court is aware this case has sparked extreme public debate regarding the actions of Jehovah's Witnesses, the role of the federal court in Puerto Rico, and the responsibilities of the Municipal Defendants.  The Court is not deaf to the concerns

of the general public that resides in gated communities.  To be sure, as much as this case is about civil liberties, it is also about the frightening amount of crime currently suffocating the island.  The general public, as evidenced by the hordes of motions recently filed by the Municipal Defendants,[1] appears not to grasp the notion that this Court is only enforcing an order of a higher court.  In doing so, this Court must strike a balance between a legitimate form of protection against crime and protecting the civil liberties of the citizenry in Puerto Rico.

## I.   Procedural History

---

**1.**   <u>See</u> Docket Nos. 979-1073.  All these motions have been filed by the Municipal Defendants after the Court issued its final order on March 21, 2013 (Docket No. 978).

To begin, this case has touched the dockets of several other courts in the past.  The case was initially assigned to, the now late, District Court Judge Jaime Pieras, Jr.  Judge Pieras ruled the Controlled Access Law was completely constitutional and did not violate the Jehovah's Witnesses' First Amendment rights to freely exercise and express their religious beliefs.[2]  The Jehovah's Witnesses appealed the decision to the First Circuit, the Federal Court of Appeals for cases from Puerto Rico. While partly agreeing with Judge Pieras, the First Circuit held that unmanned urbanization gates violated Jehovah's Witnesses' First Amendment rights.[3]  The Jehovah's Witnesses then sought further relief from the highest court in the Nation,

---

**2.**   See Watchtower Bible Tract Society of New York, Inc. v. Sanchez-Ramos, 647 F. Supp. 2d 103, 118-19 (D.P.R. 2009).

**3.**   See Watchtower, 634 F.3d 3, 17 (1st Cir. 2011).

the United States Supreme Court.  The Supreme Court decided

not to hear the Jehovah's Witnesses' claims, thus leaving the

First Circuit's opinion as the applicable law.

At this stage, given Judge Pieras' passing, the case was

randomly assigned to the undersigned judge to implement a

remedy that conformed with the First Circuit's ruling.  In order

to allow the Puerto Rico Supreme Court the opportunity and

due deference to rule on the constitutionality of a Puerto Rico

Law, this Court certified to said Court the issue of whether

unmanned gated communities were constitutional and lawful

under the Puerto Rico Constitution and law.  The Puerto Rico

Supreme Court declined to review the law based on

procedural grounds, leaving the issue unanswered.[4]  As both

---

**4.**  See Docket Nos. 795 & 855.  In its brief opposing *certiorari* by the United
States Supreme Court, the Commonwealth of Puerto Rico admitted the

the Supreme Court of the United States and the Puerto Rico

Supreme Court declined to consider the issues, this Court was

left to implement the dictates of the First Circuit.

## II.  Constitutional Protections of the Federal Constitution

The United States Constitution was ratified in 1789 after

vast and robust debate amongst the original thirteen States.

Entire libraries have been dedicated to those who vigorously

debated and drafted the Constitution, such as George

Washington, Thomas Jefferson, John Adams and James

Madison.  As part of the Bill of Rights, the First Amendment to

the Constitution was ratified on December 15, 1791, and has

remained the foundation of this Nation's civil liberties ever

---

Controlled Access Law "does not contemplate the unmanned gates."
See Brief for Respondent at 24 n.5.

since.  For over two hundred years, the First Amendment has protected the citizens of this Nation from restrictions to their free speech and religious practices.  These principles have become part of the fabric of our society and constitute an inseparable part of the United States' identity.

Puerto Rico is a Commonwealth of the United States of America.  The citizens of Puerto Rico are citizens of the United States of America.  The very same First Amendment rights that protect the citizens of the fifty States equally protect the citizens of Puerto Rico.[5]

---

**5.**  See El Vocero de Puerto Rico (Caribbean Intern. News Corp.) v. Puerto Rico, 508 U.S. 147, 149 n.1 (1993) (citing Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico, 478 U.S. 328, 331 n.1 (1986) ("We have held that Puerto Rico is subject to the First Amendment Speech Clause, the Due Process Clause of either the Fifth or the Fourteenth Amendment, and the equal protection guarantee of either the Fifth or the Fourteenth Amendment.")) (internal citations omitted).

### III.    Constitutional Protections of the Puerto Rico Constitution

The principles of the First Amendment to the United States Constitution are encapsulated in Article II §§ 3-4 of the Puerto Rico Constitution.   The United States Constitution states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . ."[6]  The Puerto Rico Constitution states, "[n]o law shall be made respecting an establishment of religion or prohibiting the free exercise thereof.  There shall be complete separation of church and state . . . ," and "[n]o law shall be made abridging the freedom of speech or of the press . . . ."[7]  These provisions essentially protect the same type of

---

**6.**   U.S. CONST. amend I.

**7.**   P.R. CONST. art. II, §§ 3-4.

conduct, with the Puerto Rico Constitution protecting a broader spectrum of speech.[8]

In the present case, as Jehovah's Witnesses are exercising their rights to freely exercise their religious beliefs and to freely speak about their beliefs, there is no difference between the protections afforded by the Puerto Rico Constitution and those of the United States Constitution.

## IV.  Historical Treatment of Public Roads by the Three Branches of Puerto Rico's Government: Legislative, Executive and Judicial

The most important message the Court intends to convey by this order is that all three branches of the Puerto Rico government recognize that the streets on this island must be

---

**8.** See Rodriguez-Garcia v. Mun. of Caguas, 354 F.3d 91, 98-99 (1st Cir. 2004); Emp. Pur. Des., Inc. v. H. I. E. Tel., 150 P.R. 924 (2000), 2000 P.R.-Eng. 569, 924.

open to the general public. This Federal Court's orders are
thus in harmony with and merely carrying out the intention
and dictates of the Puerto Rico government. First, the Puerto
Rico Legislature enacted the Civil Code, which requires all
streets and roads to be public and available for public use.[9]
These provisions have been in place since the 1930 version of
the Puerto Rico Civil Code. The same ensures that all roads on
the island are maintained and open for public use. To date, the
legislature has made no effort to repeal these provisions of the
Civil Code or amend them to allow for private roads. As such,
Puerto Rico law requires all roads on the island to be public.

Second, the island's Governors, in an exercise of the
Commonwealth's police power, have regulated access to

---

**9.**    See P.R. Laws Ann. tit. 31, §§ 1024-25.

streets located within gated Public Housing projects.  Since the
early 1990's, by use of Executive Orders, the Puerto Rican
government has controlled access to gated Public Housing
projects in a manner that allows individuals, such as Jehovah's
Witnesses, to freely access the public streets contained therein.
No subsequent Governor has revoked these access control
mechanisms or attempted to deny Jehovah's Witnesses access
to these public streets.  By recognizing the right of Jehovah's
Witnesses to enter these Public Housing projects, the Executive
Branch has created a system of access mirroring the one
created by the Court.

Third, the Puerto Rico Supreme Court has been steadfast in
protecting public access to public streets.  The Puerto Rico
Supreme Court has stated the Control Access Law is

constitutional "as long as in its application non-resident citizens are not restricted indiscriminately from accessing the public roads of the communities . . . ."[10]  Due to the public nature of these streets, they cannot be closed to the public, especially when those closures impede constitutionally protected activities such as freely exercising one's religious beliefs.[11]

Taken together, all three branches of Puerto Rico's government are in accord that access to public streets located within gated communities cannot be denied to non-residents attempting to exercise their religious beliefs.  The Court held a

---

**10.** Asociacion Pro Control de Accesso Calle Maracaibo, Inc. v. Cardona Rodriguez, 144 D.P.R. 1, Offic. Trans. at 27-28 (1997).

**11.** See Maracaibo, Offic. Trans. at 38; Nieves v. A.M. Contractors, Inc., 166 D.P.R. 399, Offic. Trans.  (2005).

Final Disposition Hearing on March 20, 2013, and entered a Partial Judgment to that effect the following day.  Since that time, none of the Municipal Defendants appealed the judgment of the Court, nor asked that the case be stayed.  If the Municipal Defendants believed the Court misapplied the law, they could have appealed.  As such, the Municipalities and the residents within their gated communities should understand the relief the Jehovah's Witnesses seek must be granted, for it is none other than a right recognized by the Puerto Rico and United States Constitutions.

Tasked with ensuring access for Jehovah's Witnesses, the Court was faced with two options: 1) order all unmanned urbanization gates dismantled and removed, or; 2) implement a scheme allowing the gates to remain, but also ensures

Jehovah's Witnesses <u>equal</u> access.  The Court chose the latter alternative, which is more protective to the residents of unmanned gated communities.

The Court has not granted unfettered access to violent criminals, nor should any knowledgeable or reputable person spread such fear.  The gates were erected as a means to reduce crime on the island.  Since the enactment of the Control Access Law, crime has not substantially abated on the island.  The Court is not aware of a single instance in which any Jehovah's Witness has been charged or convicted of a crime while expressing his or her religious beliefs. The Jehovah's Witnesses enjoy the same First Amendment rights as all residents of Puerto Rico.  If access to public streets can be denied to them, then access can be denied to anyone.  For example, an aspiring

politician will be barred from going door-to-door seeking endorsements.  Likewise, the press could also be prevented from entering a gated community to cover the reactions of residents to a court ruling, as that in this case.  More so, during Easter, Catholics could similarly be barred from participating in a Via Crucis on public streets.

No privacy rights were created by the passage of the Control Access Law.  The only manner by which residents of a gated community can change the public nature of the roads is by convincing the Legislature to amend the Civil Code to allow for private roads.  Until then, the Court is required to ensure the public has access to public roads.  In this case, that means the Jehovah's Witnesses must have access to manned and unmanned urbanizations.  When all the sources of law

related to this issue are considered, the Court believes the general public, as well as the parties, will have a better understanding of the Court's orders.

A final point for reflection.  The Commonwealth of Puerto Rico, as part of the greatest Democracy of our time, guarantees every one of its citizens religious, political, social and other precious freedoms.  Even today, many nations of the world inadequately protect, or worse, fail to protect, these rights that we often take for granted.  This case demonstrates this Nation's deep history of protecting civil liberties.  Any antipathy by individual residents of gated communities towards Jehovah's Witnesses or members of any other religious faith should yield to common sense and respect for the Rule of Law, product of the United States and Puerto Rico Constitutions.

A copy of this order shall be provided by each Municipality

to the administrator of every gated community.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of May, 2013.

<u>S/ Gustavo A. Gelpí</u>
GUSTAVO A. GELPI
UNITED STATES DISTRICT JUDGE