**Estado Libre Asociado de Puerto Rico**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL SUPREMO**

| | |
|---|---|
| **WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,** *et. al.* <br> *Recurridos* <br><br> v. <br><br> **MUNICIPIO DE DORADO,** *et. al.* <br><br> **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO** <br> *Peticionarios* | CT-2013-0014 <br><br> *CASO ORIGINAL:* 04-1452 (GAG) <br><br> **SOBRE:** CERTIFICACIÓN |

**MOCIÓN EN TORNO AL ALEGATO DEL DEPARTAMENTO DE JUSTICIA de PUERTO RICO**

AL HONORABLE TRIBUNAL:

Comparecen los recurridos Watchtower Bible and Tract Society of New York Inc., y La Congregación Cristiana Testigos de Jehová De Puerto Rico, Inc., por conducto de su representación legal y muy respetuosamente alegan y solicitan como sigue:

El pasado 23 de enero del año en curso, el Departamento de Justicia presentó su alegato como amigo de la corte, por invitación que le hiciera este Honorable Tribunal. En su alegato el Departamento de Justicia concluye que las calles por su naturaleza y afectación estatutaria son públicas. Intiman, no obstante que mediante el Reglamento Conjunto de Permisos para Obras de Construcción y Uso de Terrenos del 2010, según enmendada posteriormente, las calles han perdido su naturaleza de utilidad pública, implicada la desafectación. Respetuosamente sometemos que este argumento es equivocado por los fundamentos que exponemos a continuación.

1. **En el ordenamiento jurídico de Puerto Rico las calles son públicas por Afectación estatutaria**

Como expusimos en nuestro alegato, la legislación en Puerto Rico parte del supuesto de que las calles en desarrollos urbanos son de uso público. Es decir, **las calles mientras sean calles son de uso público.** Este entendido legislativo permea no solo el derecho civil patrimonial -a partir del Código Civil de Puerto Rico- sino que además, es un entendido que ha sido reafirmado por las distintas Asambleas Legislativas y las agencias del Ejecutivo en la legislación y reglamentación urbanística. Por último, el uso público de las calles ha sido reafirmado en múltiples ocasiones por los precedentes del Tribunal

1

Supremo de Puerto Rico. La intención y el supuesto legislativo en Puerto Rico ha sido y continúa siendo que las calles son bienes de uso público. El citado Reglamento Conjunto del 2010 según enmendado no cambia este entendido.

*(a) Código Civil de Puerto Rico*

Tres artículos del Código Civil de Puerto Rico son los más relevantes y los que establecen el uso público de las calles. Es a partir de ese supuesto legislativo, es decir, de su uso público, que debemos partir para analizar los hechos que se exponen en este caso. Los artículos relevantes del Código Civil para la pregunta que está certificada ante este Tribunal son el 255, el 256 y el 274.

El artículo 255[1] establece cuáles son los bienes de dominio público, que como se sabe, son los "destinados a uso público, como los caminos, canales, torrentes, y otros análogos". Si bien este artículo menciona los caminos y "otros análogos", es en los artículos 256 y 274 donde se mencionan expresamente las calles como bienes de dominio público como de "uso público". El artículo 256[2] dispone que "son bienes de uso público **en Puerto Rico y en sus pueblos**, los caminos estaduales, **y los vecinales**, las plazas, **las calles**, fuentes y aguas públicas, los paseos y **las obras públicas de servicio general, costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico**". (Énfasis nuestro). Nótese que se establece Puerto Rico y sus pueblos como unidad territorial y que son las "obras públicas de servicio general" a las que se especifica que son costeadas con fondos del tesoro de Puerto Rico. Por su parte, el artículo 274[3] que alude a las cosas no susceptibles de apropiación, dispone que "hay otras cosas que por el contrario, que aunque por su naturaleza son susceptibles de propiedad particular, pierden esta como consecuencia de la aplicación que de ella se hace para fines públicos incompatibles con la propiedad privada, si bien pueden adquirir su primitiva condición tan pronto cese el fin público que se les hubiera dado; tales son los terrenos de las carreteras, las calles y las plazas públicas."

Ciertamente este honorable Tribunal ha reafirmado en más de una ocasión el carácter público de las calles. <u>Gobierno de la Capital v. Consejo Ejecutivo</u>, 63 DPR 434 (1944); <u>Caquías v. Asociación de Residentes</u>, 134 DPR 181 (1993); <u>Asociación Pro Control de Acceso v. Cardona</u>, 144 DPR 1 (1997); <u>Rubert Armstrong v. ELA</u>, 97 DPR 588 (1969);

---

[1] 31 LPRA §1024.
[2] 31 LPRA §1025.
[3] 31 LPRA §1082.

2

Saldaña v. Consejo Municipal, 15 DPR 37 (1909). Esto, aún en el contexto de la aprobación de legislación que permitió a partir de 1987 el control de acceso a éstas y posterior a sus enmiendas en 1992. En ese entonces surgió la controversia de si el permiso otorgado por el Estado para el control de acceso de urbanizaciones podía implicar una política distinta respecto al carácter público de las calles. Este honorable Tribunal fue enfático en que a pesar de que la Asamblea Legislativa favoreció permitir el control de acceso a las urbanizaciones, eso no tenía la implicación de cambiar la naturaleza jurídica de las calles, es decir, su carácter de bien de uso público. Esa misma ley que fue avalada por este honorable Tribunal disponía para el control y regulación del uso de las calles, **tanto de urbanizaciones ya establecidas como urbanizaciones abiertas, como para el nuevo desarrollo de urbanizaciones que desde su origen serían de acceso controlado**. Quedó claro entonces –y el estado de derecho no ha cambiado- que aunque la Asamblea Legislativa permitió una política urbana de control de acceso de urbanizaciones, lo que se dispuso fue para su control de acceso pero no para un cambio en la naturaleza del uso pública de las calles.

Podemos colegir que la controversia de -si producto de los cambios de urbanismo pueden existir calles privadas- no es nueva en nuestra jurisdicción. En España tampoco lo ha sido y en diferentes sentencias de diversos tribunales y audiencias locales se ha discutido la controversia. Particularmente, el Tribunal Supremo de España se ha pronunciado en casos cuya controversia surge al amparo del Artículo 344 del Código Civil español (256 nuestro) y ha expresado que respecto al carácter público o privado de las calles, tanto la normativa de régimen local, como el Reglamento de Bienes (RCL 1996) que establece las clases de bienes, parten de que las calles urbanas son de uso público.[4] Ciertamente, hay un sinnúmero de sentencias de las diferentes cortes de jurisdicción española que aluden a la controversia de si las calles y caminos rurales pueden o no considerarse privados, pero el asunto no ha sido resuelto definitivamente en forma de precedente.[5]

---

[4] (TS (Sala de lo Civil) RJ/1989/5599).
[5] En una de las sentencias mencionadas por los amigos de la corte, el Tribunal de Toledo deja meridianamente claro que "[e]sta cuestión no es unánimemente concebida en la doctrina". SAP Toledo (AC 1998/1321). Valga aclarar que esta sentencia es de un caso de acción negatoria de **servidumbres**, no sobre el control de acceso y uso público de calles o sobre su naturaleza jurídica. Distinto al caso que nos trae ante este Tribunal, la parte demandada costeaba privadamente no solo el hormigón y el encintado de calles y aceras, sino también las instalaciones de luz, agua, alcantarillado y otra infraestructura necesaria para la urbanización. El resto de las sentencias españolas citadas no son de aplicación pues no tratan sobre la

3

Respecto al Artículo 344 del Código Civil español (256 nuestro), Fernando Garrido Falla, en la compilación de comentarios al Código Civil de Manuel Albaladejo, explica:

> Ahora bien, ¿existen calles privadas? (1). Convencionalmente, podríamos definir la calle como un camino que permite el acceso a las distintas zonas y edificaciones de una ciudad. Si se admite esta acepción, es obvio que la calle debe ser de uso público (y, por tanto, de dominio público; aunque también se haya propuesto la fórmula de la calle privada afecta al uso público; o lo que sería parecido: la servidumbre de paso sobre una calle privada). Y ésta parece ser ciertamente la solución a la que apunta nuestra legislación urbanística. En efecto:
>
> a. Sólo es edificable el suelo urbano; y sólo a partir del momento en que «la respectiva parcela mereciere la calificación de solar) (art. 83, 1, de la <u>Ley del Suelo</u>). Ahora bien, **para calificar el suelo como urbano ha de contar**, entre otros requisitos, "con acceso rodado" (art. 81, 2); y para tener la consideración de solar urbano es preciso que «la vía a que la parcela dé frente tenga pavimentada la calzada y encintadas las aceras» (art. 82, 2); es decir, **ha de estar una calle.**[6]
> b. Todo el proceso de urbanización de promoción privada está sujeto, entre otros, a la exigencia de que los propietarios del suelo cedan gratuitamente a los Ayuntamientos terrenos dedicados, entre otros fines, a viales, es decir, calles (art. 83, 3.°, 1); obligación que se impone igualmente a los propietarios de suelo urbanizable [art. 84, 3.°, a)].
> c. Y, según la Ley, no solamente se impone a los propietarios la obligación de ceder terrenos para viales, sino que han de sufragar los gastos de la urbanización (art. 120, 1.°); entre cuyos costes se incluyen las «obras de vialidad» [art. 122, 1.°, a)], es decir, **la construcción de las calles.**[7]
>
> La conclusión que se desprende de los preceptos examinados parece ser la de que, **aunque la obra sea sufragada por los promotores privados, la calle construida ha de ser cedida al Ayuntamiento y, por tanto, entra en su patrimonio (público).** Lo que ocurre es que la recepción de las obras por el Ayuntamiento [que, por cierto, se da por supuesta en el artículo 154, 2.°, b)], no siempre se realiza: al Ayuntamiento le suele ser más cómodo que la conservación de la obra siga en manos de los particulares, evitándose así unos gastos de mantenimiento que quizás no pudiesen compensar después ni siquiera por el sistema de las contribuciones especiales. (Énfasis nuestro).

Garrido Falla explica que la polémica sobre las llamadas "calles privadas" surge como consecuencia del hecho de que en ciertos casos las partes incumplan con el requisito de transferir el título de las calles a los municipios o ayuntamientos. No obstante, el hecho de que unilateralmente y contrario a lo que establece la ley, el desarrollador y el municipio se hayan puesto de acuerdo contractualmente para obviar la letra de la ley, no significa -ni puede significar- que tal acto es válido y le ha cambiado el carácter público a las calles de urbanizaciones. Reiteramos que tal acto sería un acto *ultra vires* pues sería

---

interpretación o aplicación de los artículos del Código Civil sino sobre el Régimen de Propiedad Horizontal, las fincas rústicas y el uso de locales comerciales, no residenciales.

[6] Como veremos, es a esta calle y a este acceso AL desarrollo, requisito para hacer del suelo uno urbanizable, a la que se refiere el Reglamento Conjunto de Permisos que cita el Departamento de Justicia, no a la naturaleza pública de las calles urbanizadas.

[7] Manuel Albadalejo García, COMENTARIOS AL CODIGO CIVIL, Tomo V, Vol 1°: Artículos 333 a 391 del Código Civil (2ª edición, 2008).

4

un contrato sin causa por ser contrario a derecho. Para tal propósito la Asamblea Legislativa tendría que establecer un procedimiento uniforme con los criterios sobre los cuáles transacción podría tener validez. No siendo ese el estado de derecho, la abdicación del Municipio de su deber en ley sería *ultra vires*. Asimismo lo reconoce el Departamento de Justicia al dejar claro que actualmente y según la Ley de Municipios Autónomos, no todos los municipios cuentan con las mismas facultades y que en este caso, el alegado cambio de naturaleza jurídica de las calles por parte del Municipio, por la vía contractual, es un acto sin facultad en ley.[8]

De forma similar la jurisprudencia del estado de Louisiana sustenta el argumento anterior. Precisamente, en <u>Parish of Jefferson v. Doody</u>, 247 La. 839 (1965), el Tribunal dejó claro que el que un municipio no cumpliese con la afectación establecida por ley, de ninguna manera podría tener la consecuencia de convertir el uso público de la calle en uno privado. En todo caso, expone el Tribunal, lo que procedería es una multa contra el que ha incumplido el mandato de ley pero no un cambio en la naturaleza jurídica de las calles, es decir, su uso público, más aún cuando –como en el caso nuestro- el uso público de las calles es de naturaleza estatutaria.

*(b) Ley para el control de acceso de urbanizaciones y uso de calles*

Como expusimos en nuestro alegato, la *Ley de Control de Tráfico de Vehículos de Motor y Uso de calles*[9] también reiteró el carácter público de las calles, no solo de las calles de urbanizaciones que fueron concebidas como "abiertas", sino de toda urbanización, aunque en su origen el desarrollador, antes de vender las unidades a los propietarios, estableciera dicho desarrollo urbano como una urbanización cerrada (gated communities). Así surge de las secciones 64 a la 64h, pero en específico, en la sección 64d-1 (a), se establece el procedimiento para que el desarrollador de proyectos de urbanización obtenga el permiso y las condiciones bajo las cuales se podrá regular el acceso a las calles de esa urbanización. Si el legislador hubiese concebido la posibilidad de urbanizaciones con calles completamente privadas cuyo acceso estuviese vedado, hubiese excluido este tipo de desarrollos urbanos de la aplicación de esta ley, más aún, no hubiese establecido criterios para asegurar que en determinadas circunstancias no pudiese

---

[8] Ver página 11 del Alegato del Departamento de Justicia.
[9] Ley Núm. 21 de 20 de mayo de 1987, 23 LPRA §§ 64-64h.

5

aprobarse un permiso de control de acceso o se garantizase, por ejemplo, el acceso ciudadano a la playa y a otras entidades gubernamentales.

El asunto es también aclarado por la Profesora Margarita García Cárdenas, experta en derecho de urbanismo, al exponer el contexto de aplicación y las controversias sobre la *Ley de control de tráfico y uso de calles*:

> [e]sta ley especial ha sido sumamente útil para los desarrolladores. Su aprobación en las cámaras legislativas provocó controversias en torno a si la disposición tendría el efecto de convertir las calles públicas en vías de acceso privadas. En particular, en los casos en los cuales es el desarrollador quien somete el área a la ley, se cuestionaba si esas calles eran públicas o privadas. En estos casos, al ofrecer a la venta y vender las primeras casas, el área ya está sujeta a la ley de control de acceso. La impresión que causa es que esas calles no son públicas. Esa impresión es totalmente errónea.[10]

En su explicación, García Cárdenas alude al requerimiento de la Ley Hipotecaria para la inscripción de desarrollos y urbanizaciones, según lo establece el Artículo 93 de la Ley Hipotecaria.[11] Y así, concluye:

> Esta necesidad de segregar y hacer públicas, por su transferencia al gobierno, las calles es obvia, ya que, de lo contrario, los solares individuales terminarían siendo fincas enclavadas. Desde el siglo diecinueve, al ser aprobado el Código Civil, se conceptuaron las calles como propiedad pública.[12]

Es decir, la *Ley Hipotecaria* es, además de la *Ley de control de tráfico y uso de calles*, otra expresión clara y contundente del legislador sobre el reconocimiento de la naturaleza y uso público de las calles, en el sentido del Artículo 256 del Código Civil. La intención legislativa se muestra y se expresa una vez más -claramente y sin ambages- en la Ley Hipotecaria: no se accede al Registro de la Propiedad si no queda claro el carácter público de las calles mientras sean calles. Y es que como hemos argumentado antes, **los terrenos que se constituyen calles una vez urbanizados, aunque en su naturaleza sean apropiables (Artículo 274), mientras sean <u>calles urbanas</u> son bienes de uso público.**

(c) *Leyes y reglamentos de planificación urbana*

Pero no solo la *Ley sobre el Control Vehicular y Acceso* a las calles es de aplicación, sino que mucho antes de su aprobación, la Ley Orgánica de la Junta de Planificación de Puerto Rico[13], la Ley Orgánica de la Administración de Reglamentos y Permisos[14], la

---

[10] Margarita E. García Cárdenas, DERECHO DE URBANIZACIONES, InterJuris (2010), páginas 80-81.
[11] 30 LPRA 2314.
[12] *García Cardenas*, supra, nota 7.
[13] 23 LPRA §62 et. seq.
[14] 23 LPRA §71 et. seq.

6

Ley de Municipios Autónomos[15], la reciente Ley para la Reforma del Proceso de Permisos[16], y todos los reglamentos adoptados a su amparo, establecieron la necesidad de mecanismos para la planificación ordenada del territorio y los criterios para un urbanismo adecuado, a favor del interés público y para evitar el desparrame urbano. En toda esa normativa, los procesos de urbanización siempre han reglamentado el desarrollo de los terrenos en Puerto Rico de forma tal que las calles de urbanizaciones fuesen de uso público. La reglamentación que en principio iba dirigida a darle mayor seguridad a la propiedad y a emprender un plan industrializador[17] El Presidente de la Junta De Planificación para entonces, Rafael Picó hace hincapié en el interés de los propietarios en la adopción de estas normas.[18] La protección que ofrece la reglamentación urbana a los propietarios de viviendas les protege de cualquier arbitrariedad al interior de su urbanización. Por otro lado, el carácter público de las calles no solo se deriva de la inversión de fondos públicos en el asfaltado y mantenimiento de las calles sino que las urbanizaciones, con control de acceso o no, se benefician del conjunto del ordenamiento territorial, del servicio de alumbrado eléctrico, del recogido de basura, de la insfraestructura de agua y alcantarillados y de otros servicios públicos. Por más aislamiento patrimonial que una comunidad cerrada pueda procurarse, ésta forma parte de un entorno social del cual recibe beneficios y para el cual tiene responsabilidades recíprocas. El uso público de las calles, aunque pueda ser razonablemente controlado, es parte de esa política pública establecida por el Estado para la cohesión urbana, territorial y ciudadana.

2. **El *Reglamento Conjunto de Permisos para Obras de Construcción y Uso de Terrenos* no aplica a esta controversia ni se refiere a la naturaleza de uso público de las calles.**

El *Reglamento Conjunto de Permisos para Obras de Construcción y Uso de Terrenos* (2010), invocado por los amigos de la corte, dedica su Capítulo 17 a los permisos requeridos **para el desarrollo de urbanizaciones**. Este Reglamento y la sección que se cita de este, no es de aplicación a la controversia que nos atañe y mucho menos puede ser muestra de la intención legislativa sobre la naturaleza y uso público de

---

[15] 21 **L.P.R.A.** § 201 a 240.
[16] 23 L.P.R.A. §9011 et seq.
[17] Rafael Picó, 10 AÑOS DE PLANIFICACIÓN EN PUERTO RICO 11 (1952).
[18] Id., en la pág. 18.

7

las calles. La sección 17.6.5, *Requisitos para Otorgarse el Permiso de Uso*, alude a "acceso", pero se refiere al acceso que debe garantizarse a una 'finca', es decir, a un solar a ser urbanizado de forma tal que los propietarios al interior del desarrollo no queden enclavados. Para que los futuros propietarios puedan acceder a sus lotes, es decir, propiedades, debe haber una vía de acceso, que en su origen puede ser pública o privada y es ese acceso (el acceso al desarrollo para que no esté enclavado) el que se debe asegurar que exista al momento de otorgarse el permiso de uso para la urbanización. La sección 17.6.5 se refiere al acceso de los futuros propietarios de las residencias en el proyecto a urbanizarse no se refiere al acceso público y ciudadano a las calles en Puerto Rico. Para eso, es claro, la Asamblea Legislativa aprobó la *Ley de control de tráfico y uso de calles* y los desarrollos urbanos deben cumplir con esta ley al regular el acceso y control de terceros a las calles. Esta ley, que es la aplicable al caso de marras, es la ley del caso y el *Reglamento Conjunto de Permisos* no pudo tener la intención de enmendarla, no solo porque no es jurídicamente posible, sino porque ni siquiera se mencionó al adoptarse el *Reglamento Conjunto de Permisos* en el 2010 o en sus posteriores enmiendas. En resumen, el *Reglamento Conjunto de Permisos* no es el reglamento aplicable en este caso sino la *Ley de control de tráfico y uso de calles* y el <u>Reglamento Núm. 20 de la Junta de Planificación</u>, adoptado a su amparo, *Reglamento de Control de Tránsito y Uso Público de Calles de la Junta de Planificación*. Más aún, argumentar que la mención de acceso *a las* urbanizaciones por vías públicas o "privadas", es muestra de la naturaleza privada de ciertas calles en exclusión del uso público es una especie de silogismo equivocado que no debe utilizarse como subterfugio para argumentar sobre el carácter de uso público de las calles. El Artículo 17.6.5 de ese Reglamento no quita ni añade respecto al uso público de las calles en Puerto Rico.

Como vemos, el estado de derecho vigente es que las calles en áreas urbanizadas son bienes de dominio (uso) público. El acto de *afectación* es el **acto legislativo** en el que el poder soberano -a través de la extensión a Puerto Rico del Código Civil desde el Siglo XIX y reiteradamente por la Asamblea Legislativa- ha establecido una política pública a favor del uso público de las calles, como claramente se expone en la legislación urbanística, incluyendo la municipal, y en los reglamentos adoptados a su amparo. Por lo tanto, a partir de eso, cualquier acto de desafectación tendría que ser establecido de la

8

misma forma, por un cambio de política pública que por vía legislativa elabore los criterios para tal desafectación. Esos criterios actualmente no existen y las implicaciones de aplicarlos caso a caso, sin criterios uniformes, al arbitrio de cada Municipio, sería detrimental. Solo a modo de ejemplo, ¿qué pasaría con la aplicación del derecho relativo al procedimiento criminal, de los derechos civiles, de la política pública protectora de la zona costanera y el acceso a las playas, del alcance al derecho expresión, de entenderse que esos espacios urbanos son "propiedad privada" y que como tal cuentan con el *derecho de exclusión erga omnes*. Estos son asuntos que no deben atenderse aisladamente ni caso a caso, mucho menos de manera descontextualizada. Se trata de política pública y permitir un cambio de política pública que permita que existan calles privadas sería un asunto a ponderar, deliberar y aprobar por la Asamblea Legislativa, lo que no ha ocurrido en nuestro estado de derecho.

### 3. La desafectación del uso público de las calles requeriría criterios de política pública que la Asamblea Legislativa tendría que adoptar.

Si bien es cierto que los bienes de uso público pueden desafectarse y que el Artículo 274 del Código Civil establece que las calles son de esos bienes que aunque en principio puedan ser apropiables, **son de uso público hasta tanto no se determine que su uso o fin público como calles cesó**, el acto de desafectación tiene que ser válido y cumplir con ciertos requisitos. En este caso, la desafectación de uso público de las calles requiere de un acto legislativo afirmativo. En este sentido, el Profesor Michel Godreau señala que:

> En tanto la terminación o cesación de la utilidad pública permite que el bien sea enajenado, **tal transformación no puede darse arbitrariamente o sólo mediante la determinación del funcionario o de la entidad que tenga su custodia; será necesario, o bien que la inutilidad surja de fenómenos naturales, o bien que medie un acto legislativo declarando el cese de tal utilidad pública.** Michel J. Godreau y Juan A. Giusti, *Las concesiones de la Corona y propiedad de la tierra en Puerto Rico, Siglos XVI-XX: un estudio jurídico*, 62 REV. JUR. UPR 351, 562-64 (1993)

De la misma forma, Diez Picazo establece que

> **La desafectación es, pues, requisito previo para los actos dispositivos. Los actos dispositivos llevados a cabo sin la previa desafectación son negocios jurídicos nulos desde el punto de vista de la ley.** Luis Diez Picazo, *Fundamentos del Derecho Civil Patrimonial*, Ed. Tecnos, Vol. 2 (1978), en la pág. 130. (Énfasis nuestro)

El *Reglamento Conjunto de Permisos* del 2010 según enmendado no puede implicar que las calles hayan perdido su naturaleza de utilidad pública como intima el amigo de la corte. De la revisión de la sección 17.6.5 de dicho Reglamento es necesario concluir que

9

este no puede tener el efecto de cambiar el naturaleza del uso público de las calles. Como señalamos anteriormente, no se refiere a la naturaleza de las calles y su uso público. Este reglamento tampoco constituye una enmienda la Ley sobre el Control Vehicular y Acceso. Tampoco constituye el Reglamento un cambio de política pública sobre la naturaleza del uso público de las calles. En fin no constituye una expresión del Legislador de su intención de cambiar el uso público de las calles que dispone nuestro ordenamiento jurídico. Como tampoco lo es el argumento en el sentido de que las calles de sus urbanizaciones no son públicas porque nunca se transfirieron al Municipio de Dorado. La controversia jurídica sería si el hecho de que no se transfirieron al Municipio, como la ley y los reglamentos ordenan, es válido para desafectar lo que por vía legislativa se ha destinado a uso público. La respuesta es que no. La Junta de Planificación y los municipios son las entidades encargadas de planificar el uso de terrenos en el país, lo que incluye el desarrollo de urbanizaciones. Lo cierto es que ni la Junta de Planificación ni los municipios en sus prerrogativas de ordenación territorial cuentan con la facultad para abdicar su responsabilidad por regular y mantener el uso público de las calles. De hecho, nada en la Ley de Municipios Autónomos autoriza a que un municipio ceda su deber fiduciario establecido en ley para la regulación de los permisos de urbanizaciones, su deber de recibir e inscribir la cesión de las calles públicas de un desarrollo urbano o unilateralmente relevar a ciertos desarrolladores del deber legal de cumplir con los requisitos de ley para urbanizar, los permisos de uso de urbanización y los criterios para el control de acceso de urbanizaciones. Por lo tanto, los actos jurídicos privativos, ya sea entre agencias, municipios y corporaciones o manos privadas, **no bastan** para alterar la clasificación de un bien de dominio público que ha sido destinado como tal por ley. Los criterios para dicha desafectación no forman parte de nuestro estado de derecho y le corresponde a la Asamblea Legislativa adoptarlos si lo entiende apropiado.

POR TODO LO ANTERIOR, muy respetuosamente sometemos que conforme el ordenamiento jurídico en Puerto Rico las calles son bienes de uso público, no privado y le corresponde a la Asamblea Legislativa determinar si ha de cambiar ese carácter, así como los términos y condiciones que serán necesarios para ello.

Respetuosamente Sometido.

En San Juan, Puerto Rico, a 29 de enero 2014.

10

NORA VARGAS-ACOSTA
TS Núm.: 7824
Edificio First Federal
1056 Avenida Muñoz Rivera, Suite 1004
Rio Piedras, PR 00927-5026
Tels. 787-751-7485
787-525-5514
Fax. 787-751-7485
nvargasacosta@onelinkpr.net

*[signature]*

NORA VARGAS-ACOSTA
RUA Núm. 7824


PAUL D. POLIDORO*
Watchtower Legal Department
100 Watchtower Drive
Patterson, NY 12563
Tel. 845-306-1000
Fax. 845-306-0709
ppolidor@jw.org

**CERTIFICO**: Que en esta misma fecha le hemos enviado por correo ordinario copia fiel y exacta de este escrito a: **Lcdo. Héctor Rivera Cruz**, P.O. Box 9023954, Old San Juan Station, San Juan, PR 00902-3954; **Lcdo. Iván Pasarell Jové**, P.O. Box 9021612, San Juan, PR 00902-1612;**LCDO. CLAUDIO ALIFF-ORTIZ,** ALB Plaza #16, Carr. 199 Suite 400, Guaynabo, PR 00969; **Lcdo. Michael C. MCCall,** P.O. Box 362634, San Juan, PR 00936-2634; **Lcdo. Luis E. Pabón-Roca y Lcdo. Clarisa Solá-Gómez**, P.O. Box 11397, Fernández Juncos Station,San Juan, PR 00910-2497;**Lcdo. Pedro R. Vázquez, III,** Office, 405 Esmeralda, Ave. Suite 2 PMB 153,Guaynabo, PR 00969; **Lcda. Rafael E. Rivera-Sánchez;**P.O. Box 191884,San Juan, PR 00919-1884;**Lcdo. Edgar Hernández-Sánchez,** P.O. Box 364966, San Juan, PR 00936-4966; **Lcdo. Rosa M. Cruz-Niemiec,** P.O. Box 195498,San Juan, PR 00919-5498;**LCDO. ROBERT MILLÁN,** Calle San José #252, San Juan, PR 00901;**Lcdo Alejandro Carrasco,** Urb. El Cerezal, 1684 Calle Paraná, San Juan, PR 00926. **United States District Court of Puerto Rico,** Edif. Federal Ave. Chardón, Suite 150, San Juan PR 00918-1767; Hon. Gustavo Gelpí, Clemente Ruiz Nazario , U.S. District Court, Edif. Federal Ave. Chardón, Suite 150, San Juan PR 00918;**Lcda. Margarita Mercado Echegaray** , Procuradora General y **Lcda.Amarilis Ramos Rodríguez,** Procuradora General Auxiliar, ambas a

11

Departamento de Justicia, P.O. Box 9020192, San Juan, Puerto Rico 00902-0192; **Lcdo. Héctor M. Laffitte,** y **Lcdo. Arturo García Solá** ambos a P.O. Box 364225, San Juan, Puerto Rico 00936 ; **Lcdo. Néstor Durán González,** 270 Ave. Muñoz Rivera, San Juan Puerto Rico, 00918.

En San Juan, Puerto Rico a 29 de enero 2014.

*[signature]*
Nora Vargas Acosta
Abogada (RUA) Núm. 7824
nvargasacosta@onelinkpr.net
First Federal Bldg. St. 1004
Ave. Muñoz Rivera 1056
Río Piedras, Puerto Rico 00927
Tel./Fax: (787) 751-7485

12