**Estado Libre Asociado de Puerto Rico**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL SUPREMO**



| | | |
|---|---|---|
| **WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,** *et. al.* <br> *Recurridos* <br><br> v. <br><br> **MUNICIPIO DE DORADO,** *et. al.* <br><br> **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO** <br> *Peticionarios* | **CT-2013-0014** | ***CASO ORIGINAL:*** *04-1452  (GAG)* <br><br> **SOBRE:** CERTIFICACIÓN |

## MOCIÓN INFORMATIVA SOBRE FE DE ERRATA

AL HONORABLE TRIBUNAL:

COMPARECEN los recurridos WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., Y LA CONGREGACIÓN CRISTIANA TESTIGOS DE JEHOVÁ DE PUERTO RICO, INC., por conducto de su representación legal y muy respetuosamente alegan y solicitan como sigue:

1.      Los aquí comparecientes presentaron su Alegato de la Parte Recurrida  (Alegato) el pasado 4 de noviembre 2013.   Nos hemos percatado que el Alegato presentado ante el Tribunal no concuerda con la versión final corregida del documento y contiene errores.  Mediante la presente moción sometemos las correcciones pertinentes.

2.      A la página tres (3) del Alegato **donde dice:** *U.I.E.T vs. Empresas Puertorriqueñas,* 150 D.P.R. 1 (2000) **debe decir:** *Empresas Puertorriqueñas v. HIETEL* , 150 D.P.R. 924 (2000).

3.      A la Página cuatro (4) **donde dice:** art. 1 de la Ley Núm. 156,  de 10 de agosto  de 1983 **debe decir:** art. 1 de la Ley Núm. 156,  de 10 de agosto  de 1988

4.      Al imprimir el documento se quedaron fuera cinco líneas  al final de  la página seis (6)  y comienzando  la página siete (7) del Alegato presentado. **El error  aparece  donde dice:** "Ciertamente  nuestro ordenamiento  reconoce las servidumbres en equidad  como restricciones" y continúa en la pagina 7 diciendo : "puede cambiar   el estado de derecho vigente en cuanto a la naturaleza   pública de las calles . Eso le corresponde a la Legislatura".

        **La versión  correcta  debe decir:** "Ciertamente   nuestro ordenamiento   reconoce las servidumbres en equidad  como restricciones a la propiedad . No obstante  las servidumbres  en equidad  que se constituyen unilateralmente, serán  válidas  siempre que no sean contrarias  a derecho  y al orden  público.  *Glines v.  Matta,* 19 D.P.R.  409 (1913).  [los tribunales

1

generalmente deben hacer cumplir las servidumbres en equidad si no son contrarias al orden público y no producen verdaderas injusticias.] La expresión unilateral de un desarrollador de proyecto urbano de residencias a los efectos de que las calles serán privadas , de por sí no….."

5.     A la página siete (7) del Alegato , el último párrafo que aparece en dicha página debe **eliminarse** comenzando **donde dice** : " La alegación de BCC de que ellos son "una comunidad privada" no les exime del claro……" hasta la palabra " derechos" . Este párrafo aparece íntegro en la página 8.

6. A la página ocho (8) del Alegato donde dice: *"Luis A. Nieves y otros v. AM Contractors, Inc., y Otros, 166D.P.R. 16 (2005)."* **debe decir:** *Luis A. Nieves y otros v. AM Contractors, Inc., y Otros,* 166 D.P.R. 399, 422 (2005).

7.     En la página titulada Indice Legal , corresponden tres correcciones : 1) **donde dice** :*Luis A. Nieves y Otros v. A.M. Contractors, Inc y otros* , 166 D.P.R. 16 (2005) **debe decir** : *Luis A. Nieves y Otros v. A.M. Contractors, Inc y otros,* 166 D.P.R. 399 (2005); 2) **donde dice** *San Gerónimo Caribe Project, Inc., v. E.L.A.* , **debe decir:** *San Gerónimo Caribe Project, Inc., v. E.L.A.* 174 D.P.R. 519 (2008);3) **donde dice** *U.I.E.T. v. Empresas Puertorriqueñas,* 150 D.P.R. 1 (2000) **debe decir:** *Empresas Puertorriqueñas v. HIETEL,* 150 D.P.R. 924 (2000). Sometemos junto a esta moción el **Alegato con las correcciones** que aquí se informan como **Anejo 1,** así como el **Alegato de la Parte Recurrida presentado el 4 de noviembre 2013** como **Anejo 2.**

Por Todo Lo Cual Muy Respetuosamente solicitamos de este Honorable Tribunal que tomen conocimiento de las correcciones al Alegato sometido por Watctower Bible and Tract Society of New York Inc., y la Congregación Cristiana de los Testigos de Jehová informadas en esta moción.

Respetuosamente Sometido.

En San Juan , Puerto Rico a 31 de enero, 2014.

**NORA VARGAS-ACOSTA**
**TS Núm.: 7824**
Edificio First Federal
1056 Avenida Muñoz Rivera, Suite 1004
Rio Piedras, PR 00927-5026
Tels. 787-751-7485
787-525-5514
Fax. 787-751-7485
nvargasacosta@onelinkpr.net

2

**NORA VARGAS-ACOSTA**
RUA Núm. 7824

**PAUL D. POLIDORO***
Watchtower Legal Department
100 Watchtower Drive
Patterson, NY 12563
Tel. 845-306-1000
Fax. 845-306-0709
ppolidor@jw.org

**CERTIFICO:** Que en esta misma fecha  le hemos enviado por correo ordinario copia fiel y exacta de este escrito a: **Lcdo. Héctor Rivera Cruz**, P.O. Box 9023954, Old San Juan Station, San Juan, PR  00902-3954; **Lcdo. Iván Pasarell Jové**, P.O. Box 9021612, San Juan, PR  00902-1612;**LCDO. CLAUDIO ALIFF-ORTIZ**, ALB Plaza #16, Carr. 199 Suite 400, Guaynabo, PR  00969; **Lcdo. Michael C. MCCall**, P.O. Box 362634, San Juan, PR  00936-2634; **Lcdo. Luis E. Pabón-Roca y Lcdo. Clarisa Solá-Gómez**, P.O. Box 11397, Fernández Juncos Station,San Juan, PR  00910-2497;**Lcdo. Pedro R. Vázquez, III**, Office, 405 Esmeralda, Ave. Suite 2 PMB 153,Guaynabo, PR  00969; **Lcda. Rafael E. Rivera-Sánchez;**P.O. Box 191884,San Juan, PR  00919-1884;**Lcdo. Edgar Hernández-Sánchez**, P.O. Box 364966, San Juan, PR  00936-4966; **Lcda. Rosa M. Cruz-Niemiec**, P.O. Box 195498,San Juan, PR  00919-5498;**LCDO. ROBERT MILLÁN**, Calle San José #252, San Juan, PR  00901;**Lcdo Alejandro G. Carrasco Castillo**, Urb. El Cerezal, 1684 Calle Paraná, San Juan, PR  00926. **United States District Court of Puerto Rico**, Edif. Federal Ave. Chardón, Suite 150, San Juan PR  00918-1767; Hon. Gustavo A. Gelpí, Clemente Ruiz Nazario U.S. District Court , Edif. Federal Ave. Chardón, Suite 150, San Juan PR  00918; **Lcda. Margarita Mercado Echegaray** , Procuradora General y **Lcda.Amarilis Ramos Rodríguez**, Procuradora General Auxiliar, ambas a Departamento de Justicia , P.O. Box 9020192, San Juan , Puerto Rico 00902-0192; **Lcdo. Héctor M. Laffitte**, y **Lcdo. Arturo García Solá** ambos a P.O. Box 364225, San Juan, Puerto Rico 00936 ; **Lcdo. Néstor Durán González**, 270 Ave. Muñoz Rivera, San Juan Puerto Rico, 00918.

En San Juan, Puerto Rico a  31  de enero 2014.

Nora Vargas Acosta
Abogada (RUA) Núm. 7824
nvargasacosta@onelinkpr.net
First Federal Bldg. St. 1004
Ave. Muñoz Rivera 1056
Río Piedras, Puerto Rico 00927
Tel./Fax: (787) 751-7485

Estado Libre Asociado de Puerto Rico
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL SUPREMO**

| | | |
|---|---|---|
| **WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,** *et. al.*<br><br>*Recurridos*<br><br>v.<br><br>**MUNICIPIO DE DORADO,** *et. al.*<br><br>**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**<br>*Peticionarios* | **CT-2013-0014** | **CASO ORIGINAL:** 04-1452 (GAG)<br><br>**SOBRE:** CERTIFICACIÓN |

| | |
|---|---|
| **NATURALEZA:** | **CERTIFICACIÓN INTERJURISDICCIONAL** |
| **MATERIA:** | **LEY DE CONTROL DE ACCESO** |
| **ASUNTO:** | **NATURALEZA JURÍDICA DE LAS CALLES** |

### ALEGATO DE LA PARTE RECURRIDA

**PETICIONARIOS**

**MUNICIPIO DE DORADO**
**BUFETE HÉCTOR RIVERA CRUZ**
P.O. Box 9023954
Old San Juan Station
San Juan, PR  00902-3954
Tels. 787-722-8825
787-723-1061

**HÉCTOR RIVERA CRUZ**
RUA Núm. 4634
bufetehectorriveracruz@gmail.com

**IVÁN PASARELL JOVÉ**
RUA Núm. 12692
P.O. Box 9021612
San Juan, PR  00902-1612
Tel. 787-647-4826
Fax. 787 -722-5206
ipasarell@yahoo.com

**UNITED STATES DISTRICT COURT**
**OF PUERTO RICO**
Edif. Federal
Ave. Chardón, Suite 150
San Juan PR  00918-1767

_Anejo 1.
Alegato con Correcciones incluidas

**RECURRIDOS**

**WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.**

**CONGREGACIÓN CRISTIANA DE LOS TESTIGOS DE JEHOVAH DE PUERTO RICO, INC.**

**NORA VARGAS-ACOSTA**
RUA Núm. 7824
First Federal Bldg. Suite 1004
1056 Muñoz Rivera Ave
San Juan, PR  00927
Tels. 787-751-7485
787-525-5514
Fax. 787-751-7485
nvargasacosta@onelinkpr.net

**PAUL D. POLIDORO**
Watchtower Legal Department
100 Watchtower Drive
Patterson, NY  12563
Tel. 845-306-1000
Fax. 845-306-0709
ppolidor@jw.org

**OTROS PARTICIPANTES ANTE EL TRIBUNAL FEDERAL**

**LCDO. CLAUDIO ALIFF-ORTIZ**
RUA Núm. 8771
ALB Plaza #16
Carr. 199 Suite 400
Guaynabo, PR  00969
Tel. 787-474-5447
Fax. 787-474-5451
califf@alblegal.net

**LCDO. MICHAEL C. MCCALL**
(No postula en Tribunal de E.L.A  de PR)
P.O. Box 362634
San Juan, PR  00936-2634
Tel. 787-232-4530
Fax. 787-777-0737
michaelm@caribe.net

**LCDO. LUIS E. PABÓN-ROCA**
RUA Núm. 11048
facciopabonroca@microjuris.com

**LCDA. CLARISA SOLÁ-GÓMEZ**
RUA Núm. 11149
facciopabonroca@microjuris.com
P.O. Box 11397
Fernández Juncos Station
San Juan, PR  00910-2497
Tel. 787-764-1800
Fax. 787-777-0737

**LCDO. PEDRO R. VÁZQUEZ, III**
(No postula en PR)
Office, 405 Esmeralda
Ave. Suite 2 PMB 153
Guaynabo, PR  00969
Tel. 787-925-4669
Fax. 787-789-3340
prvazquez@hotmail.com


**LCDO. RAFAEL E. RIVERA-SÁNCHEZ**
RUA Núm. 14454
P.O. Box 191884
San Juan, PR  00919-1884
Tel. 787-528-2062
Fax. 787-728-5505
rafaelrivera.lawoffice@gmail.com


**LCDO. EDGAR HERNÁNDEZ-SÁNCHEZ**
RUA Núm. 9908
P.O. Box 364966
San Juan, PR  00936-4966
Tel. 787-767-9625
Fax. 787-622-2229
e_hernandez@cnrd.com


**LCDA. ROSA M. CRUZ-NIEMIEC**
RUA Núm. 9041
P.O. Box 195498
San Juan, PR  00919-5498
Tel. 787-777-0495
Fax. 787-777-0439
cnvlaw@gmail.com


**LCDO. ROBERT MILLÁN**
RUA Núm. 8238
Calle San José #252
San Juan, PR  00901
Tel. 787-725-0946
Fax. 787-725-0946
rmi3183180@aol.com


**LCDA. GISELLE M. MARTÍNEZ-VELÁZQUEZ**
Urb. EI Cerezal 1684
Paraná St.
San Juan, PR  00926
Giselle.martinez@gmail.com

Estado Libre Asociado de Puerto Rico
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL SUPREMO**

| | | |
|---|---|---|
| **WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,** *et. al.* <br> *Recurridos* <br><br> **v.** <br><br> **MUNICIPIO DE DORADO,** *et. al.* <br><br> **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO** <br> *Peticionarios* | **CT-2013-0014** | **CASO ORIGINAL:** 04-1452 (GAG) <br><br> **SOBRE:** CERTIFICACIÓN |

## ÍNDICE DE MATERIAS

**MATERIA**                                                   **PÁGINA(S)**

**I.  JURISDICCIÓN DEL TRIBUNAL** .................................................... 1

**II.  LA CUESTIÓN DE DERECHO ANTE EL TRIBUNAL** ........................... 1-3

**III.  TRASFONDO DEL LITIGIO SOBRE EL CONTROL DE ACCESO** ...................... 3-4

**IV.  ARGUMENTACIÓN** ........................................................ **5-13**

    **A. LA NATURALEZA DE LA URBANIZACIÓN BRIGHTON COUNTRY CLUB** .................................................................................... 5-8

    **B. LA NATURALEZA DE LAS CALLES PÚBLICAS EN PUERTO RICO** ...... 8-13

        1. Derecho Vigente ...................................................... 8-10

        2. Régimen de Control de Acceso preserva Carácter público de las calles ...... 11-12

        3. Dorado actuó ultra vires ................................................ 12-13

**V.  CONCLUSIÓN Y SÚPLICA** ............................................... 113

**VI.  CERTIFICACIÓN** ....................................................... 13-14

Estado Libre Asociado de Puerto Rico
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL SUPREMO**

| | | |
|---|---|---|
| **WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,** *et. al.* <br> *Recurridos* <br><br> **v.** <br><br> **MUNICIPIO DE DORADO,** *et. al.* <br><br> **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO** <br> *Peticionarios* | **CT-2013-0014** | **CASO ORIGINAL:** 04-1452 (GAG) <br><br> **SOBRE:** CERTIFICACIÓN |

## ÍNDICE LEGAL

**MATERIA**

**PÁGINA(S)**

### I.   JURISPRUDENCIA

**TRIBUNAL SUPREMO DE PUERTO RICO**

*Asoc. Pro Control de Acceso Calle Maracaibo, Inc. v. Cardona Rodríguez*, 144 D.P.R. 1 (1997)..................................................................................................,2,4,9,10,11

*Asoc. Vecinos de Villa Caparra, Inc., v . Iglesia Católica,* 117 D.P.R. 346 (1986) ......................................................................................... 8

*Armstrong v. E.L.A.* , 97 D.P.R.  588 (1969)...............................................10

*Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedras,* 134 D.P.R. 181 (1993) ...............................................................................5,10,11

*Luis A. Nieves y Otros v. AM Contractors, Inc. y Otros,* 166 D.P.R. 399 (2005) ........................ 8

*Glines v. Matta,* 19 D.P.R. 409 (1913)..................................................................6

*Gobierno de la Capital v. Consejo Educativo,*63 D.P.R. 434 (1944)...............................10

*Saldaña et al. v. El Consejo Municipal de San Juan, et al.,* 15 D.P.R. 37 (1909)..............10,12

*San Gerónimo  Caribe Project , Inc. v. E.L.A*...174 D.P.R. 519 (2008)..............................7

*Empresas Puertorriqueñas v. HIETEL ,* 150 D.P.R.924 (2000)......................................3

TRIBUNAL DE APELACIONES DE PUERTO RICO

*Omega Development Corp. v. Asoc. de Propietarias de Vistamar Marina, Inc.,* 2000 T.C.A. 1079......................................................................................... 12

*Soto Santiago v.  Monacillos  Center ,* 2011 TA 1274 ...............................................9

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -2

---

## TRIBUNAL SUPREMO DE ESTADOS UNIDOS

*Evans vs. Newton,* 382 US 296 (1966).................................................................................3

*Marsh vs. Alabama,* 326 US 501 (1946)...............................................................2,3,8

*Shelley vs. Krammer*, 334 US 1 (1948)...................................................................3

*Watchtower  vs. Village of Stratton,* 536 U.S. 150 (2002)...........................................3

## TRIBUNAL FEDERAL DE APELACIONES

*Watchtower et al vs. Segardía et al.,* Escrito de los Demandantes-Recurrentes ante el Tribunal de Apelaciones del Primer Circuito de los Estados Unidos, 09-2273 (2010) ...............................3

*Watchtower Bible & Tract Soc'y of N.Y., Inc. vs. Segardía de Jesús,* 634 F. 3d 3 (1st Cir. 2011)...................................................................................4

## II.   LEGISLACIÓN Y REGLAMENTACIÓN

Código Civil de Puerto Rico, Arts. 255 y 256 (31 L.P.R.A. §§ 1024 y 1025)… ..................6,11

Código Civil de Puerto Rico, Art, 274(31 L.P.R.A §1082 ...........................................10

Código Civil de Puerto Rico, Art. 280  (31 L.P.R.A. §1111)...........................................8

Ley Hipotecaria y del Registro de la Propiedad, Artículo 93 , 30 L.P.R.A. § 2314.............. 6,9,10,13

Reglamento Hipotecario Artículo 101.1 § 870.377 aprobado 13 de julio 1980 ..................9,13

Ley de Control de Acceso, Ley Núm 21 de 20 de mayo de 1987, según enmendada, 23 LPRA §§ 64, *et. seq*...............................................1,3,6,7,10,13

Ley de Condominios, 31 L.P.R.A.  s 1291..................................................2

**Estado Libre Asociado de Puerto Rico**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL SUPREMO**

| | | |
|---|---|---|
| **WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,** *et. al.* <br> *Recurridos* <br><br> **v.** <br><br> **MUNICIPIO DE DORADO,** *et. al.* <br><br> **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO** <br> *Peticionarios* | **CT-2013-0014** | **CASO ORIGINAL:** 04-1452 (GAG) <br><br> **SOBRE:** CERTIFICACIÓN |

### ALEGATO DE WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. y CONGREGACIÓN CRISTIANA DE LOS TESTIGOS DE JEHOVÁ DE PUERTO RICO, INC.

AL HONORABLE TRIBUNAL:

COMPARECEN los **Recurridos WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,** y la **CONGREGACIÓN CRISTIANA DE LOS TESTIGOS DE JEHOVÁ DE PUERTO RICO, INC.,** y respetuosamente responden a la petición del Municipio de Dorado.

#### I. JURISDICCION DEL TRIBUNAL

El pasado 17 de julio 2013, este Honorable Tribunal acogió la Solicitud de Certificación Interjurisdiccional presentada por la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico. La parte Recurrente, Municipio de Dorado presentó su Alegato el pasado 25 de septiembre 2013. Los Recurrentes Watchtower Bible and Tract Society y la Congregación Cristiana de los Testigos de Jehová le solicitaron a este Honorable Foro un término adicional de cinco días laborables para presentar su Alegato.

#### II. LA CUESTIÓN DE DERECHO ANTE EL TRIBUNAL

La interrogante que certifica el Tribunal Federal a esta Honorable Curia, si las leyes de Puerto Rico permiten la existencia de calles privadas, surge en un contexto muy específico. Se presenta en el contexto de urbanizaciones que, después de recibir permiso para instalar sistemas de control de acceso bajo la Ley de Control de Acceso, 23 LPRA §§ 64-64(h) (2008), rehúsan acatar la directiva del Tribunal de que "[l]as asociaciones de residentes tienen que tener

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -2

_____

presente que no podrán denegar el acceso a las calles controladas para el ejercicio de actividades constitucionalmente protegidas." *Asociación Pro Control de Acceso Calle Maracaibo, Inc. v. Cardona Rodríguez*, 144 D.P.R. 1, n.14 (1997).

El caso ante la consideración del Tribunal Federal sólo aplica a urbanizaciones que, como el Brighton Country Club ("BCC"), <u>recibieron permiso para controlar el acceso bajo la Ley de Control de Acceso de Puerto Rico</u>.  No existe una controversia bajo la Ley de Condominios (31 LPRA sec. 1291); tampoco por acceso a hoteles turísticos como el Ritz Carlton Reserve y el Ponce Hilton.  Los Testigos de Jehová sólo piden poder entrar a las calles residenciales cerradas bajo la Ley de Control de Acceso, con el fin de poder ejercer sus derechos constitucionales a la libertad de expresión religiosa en un foro público tradicional como son las calles.

BCC rehúsa permitir que sus conciudadanos, personas que sólo desean compartir un mensaje de esperanza y consuelo de la Biblia, accedan a calles residenciales de la urbanización cuya entrada han cerrado con portones (después de haber solicitado y recibir el permiso de control de acceso).  En defensa de esta urbanización, el Municipio de Dorado presenta un escrito alegando que no se trata de calles públicas porque jamás le fueron cedidas al municipio, y que medió la desafectación de las calles públicas "cuando el Municipio de Dorado condicionó su endoso a que las calles ..... dentro del predio del proyecto mantuvieran su naturaleza privada". Alegato de Municipio de Dorado , p. 14.  Por ende alegan, BCC como ente privado titular de las calles, puede negarles acceso a los Testigos de Jehová a sus calles.

Muy respetuosamente sometemos que la posición del Municipio de Dorado es contrario al estado de derecho vigente en Puerto Rico, donde surge con meridiana claridad que las calles por disposición de ley son públicas; que el Municipio no puede desafectar el carácter público de las calles de las urbanizaciones sometidas al régimen bajo la Ley de Control de Acceso y sujetas la Ley Hipotecaria, y el Reglamento que la implementa como pretende hacerlo.  A falta de legislación al contrario, las calles en Puerto Rico son de naturaleza pública.

<u>Esta no es la primera vez que se pretende utilizar "instituciones privadas" para circunvenir lo que de otro modo le está vedado al estado</u>. Véase; *Marsh vs Alabama*, 326 US

Case 3:04-cv-01452-GAG-SCC   Document 1382   Filed 02/05/14   Page 12 of 44

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -3

501 (1946),[permitiendo la distribución de literatura religiosa en un company town]"There is no more reason for depriving these people [living in private company towns] of the liberties guaranteed by the First & Fourteen Amendment than there is to curtailing these freedoms with respect to any other citizen"; *Shelley vs Krammer*, 334 US 1 (1948) [declarando ilegal una servidumbre en equidad de un urbanizador privado que prohibía la venta de la propiedad a negros]; *Evans vs Newton*, 382 US 296 (1966) [declarando ilegal la exclusión de negros de un parque privado donado al pueblo de Macon, según dispuso el testador]. *Empresas Puertorriqueñas v. H.I.E.T.E.L.*, 150 D.P.R. 924(2000) [validando el derecho de los trabajadores a manifestarse en un centro comercial privado que posee oficinas de corporaciones públicas].Cónsono con la jurisprudencia antes citada, los tribunales han concluido que cuando un ente privado (como BCC) ejerce o realiza una función gubernamental o pública, están limitados por las mismas reglas que son de aplicabilidad al estado.

Los Testigos de Jehová muy respetuosamente solicitan que este Tribunal, no abandone su tradicional defensa de la libertad de expresión y por el contrario emita un fallo que permita la difusión de ideas en toda urbanización que regule el acceso a las vías residenciales en armonía con el régimen estatutario de control de acceso vigente en el Estado Libre Asociado.

## III. TRASFONDO DEL LITIGIO SOBRE EL CONTROL DE ACCESO

A los testigos de Jehová se les conoce por su ministerio público en obediencia al mandato bíblico de predicar "de casa en casa," el cual "es un requisito de su religión." *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 160-161 (2002) (traducción nuestra). Los testigos de Jehová "ofrecen literatura religiosa sin costo a todo a quien le interese leerla." *Id.*, pág. 153 (traducción nuestra).

Puerto Rico instituyó la Ley de Control de Acceso que permite que los vecindarios—urbanizaciones—erijan muros y portones "para el control del tráfico de vehículos de motor y el uso público de las calles en urbanizaciones y comunidades residenciales públicas o privadas". 23 L.P.R.A. § 64 ( Ley, Núm. 21, de 20 de mayo 1987 , según enmendado por el art. 1 de la Ley Núm. 156, de 10 de agosto 1988).

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -4

A medida que aumentaba la cantidad de vecindarios en Puerto Rico que instalaban puntos de control y portones sin guardia, los testigos de Jehová se enfrentaron con que se les negaba el acceso a las calles residenciales públicas. Como observó el Tribunal de Apelaciones del Primer Circuito de los Estados Unidos:

> Desde el principio, los testigos de Jehová han reclamado que con frecuencia se les impide entrar a urbanizaciones para participar en actividades protegidas por la Constitución..... Dicen que en algunos lugares bajo control de acceso la única entrada es a través de portones cerrados y sin guardia, donde los residentes pueden optar por no dejar entrar a los visitantes; otros tienen guardias que no permiten entrar a quienes buscan prosélitos, o que prohíben la entrada a todo visitante que no haya sido autorizado directamente por un residente o por la asociación. En otros más se alega que los guardias de seguridad intermitentemente niegan el acceso a los testigos de Jehová.

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Segardía de Jesús*, 634 F. 3d 3, 7 (1st Cir. 2011) (traducción nuestra).

Por ende, el Tribunal de Apelaciones de los Estados Unidos para el primer Circuito resolvió que el régimen de Control de Acceso se estaba administrando de manera inconstitucional toda vez que le impedía a los Testigos de Jehová ejercer el ministerio público de casa en casa. En su fallo, el Tribunal Federal de Apelaciones señaló que la obstrucción de la actividad de expresión religiosa de los testigos de Jehová estaba ocurriendo por toda la Isla:

> "Tras una encuesta, los testigos de Jehová informaron que de 770 lugares de control de acceso en 59 municipios, con un total de 96,884 residencias, no pudieron entrar libremente a 587 urbanizaciones en 57 municipios, con un total de 67,095 residencias, ya fuera porque un guardia de seguridad les negó el acceso o porque no tenían manera de entrar por un portón sin guardia de seguridad." *Id.*, pág. 8 (traducción nuestra).

El caso fue referido al Tribunal de Distrito Federal para continuar con los procedimientos. Como parte de dichos procedimientos el Tribunal Federal le solicitó a los municipios que certificaran las urbanizaciones en sus municipios con control de acceso que carecían de un guardia de seguridad toda vez que éstas presentaban un problema especial de acceso.[1]

---

[1] Cerca del 50% de las urbanizaciones donde los testigos de Jehová no pueden entrar tienen portones sin guardia de seguridad. Escrito de *Watchtower*, 09-2273, pág. 11. Como hizo notar el Tribunal Federal, este "Tribunal quizás tenga que determinar si los portones sin guardia de seguridad son constitucionales cuando resuelva la cuestión de las carreteras privadas." (Docket Núm. 1173, pág. 9) (traducción nuestra). Los Recurridos respetuosamente concuerdan.

Pese a que este Tribunal se ha "absten[ido] de hacer pronunciamientos sobre aquellos sistemas que no tengan guardia en una de sus entradas vehiculares", el gobierno ha seguido aprobando centenares de urbanizaciones sin guardia de seguridad. *Maracaibo*, pág. 22. El Estado Libre Asociado de Puerto Rico lo ha hecho a pesar de haber "admitido que la Ley de Control de Acceso no contempla el uso de portones sin guardia de

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -5

## IV. ARGUMENTACION

## A. LA NATURALEZA DE LA URBANIZACIÓN BRIGHTON COUNTRY CLUB

El Municipio de Dorado incluyó a BCC entre las 7 urbanizaciones con control de acceso bajo su jurisdicción que carecían de un guardia en la entrada a la urbanización. (Docket Núm. 964, pág. 2) (traducción nuestra).  Posteriormente, el Municipio informó al Tribunal Federal que BCC había solicitado "la aprobación y/o permiso del gobierno para cumplir con el reglamento" de la Ley Núm. 21.  (Docket Núm. 1087, pág. 4) (traducción nuestra).  Así las cosas, el Tribunal Federal para el distrito de Puerto Rico falló que "[d]urante la construcción, BCC solicitó y recibió la aprobación del gobierno bajo la Ley de Control de Acceso para construir un portón en su entrada. (Véase Docket Núm. 1087, ¶ 4.)" (Docket Núm. 1173, pág. 3) (traducción nuestra).

El Municipio de Dorado alega  que BCC es  una comunidad privada y que sus calles y aceras son privadas, por lo que no está sujeta a las órdenes del Tribunal Federal para el distrito de Puerto Rico como tampoco las del Tribunal Federal Apelativa para el  Primer Circuito. El Municipio de Dorado argumenta  que las calles de  BCC son privadas  desde su organización  y constitución en el 2005  y que nunca han sido transferidas al municipio. Señala además que endosó  el proyecto condicionado a que mantuvieran  las calles de forma privada. Alegato del Municipio a la p. 3 y 5.  El Municipio postula, sin decirlo, que la voluntad humana puede crear *ad libitum* una figura del derecho real no legislada.

Ni BCC ni el Municipio de Dorado han explicado por qué, si sus vías residenciales son de hecho privadas, BCC solicitó permiso para controlar el acceso bajo el régimen de Control de Acceso del Estado Libre Asociado, y en efecto consignó como requisito la obtención de los permisos en su Escritura número 1 sobre Condiciones Restrictivas. Ap. XI -1 Alegato del

seguridad." (Docket Núm. 1074, págs. 4 y 5, nota 4, Orden del Tribunal de Distrito que cita el Escrito del Estado Libre Asociado de Puerto Rico en oposición al recurso de Certiorari en el Tribunal Supremo de los Estados Unidos) (traducción nuestra).
El efecto de conceder permisos de portones sin guardia es convertir las calles públicas en privadas en cada vecindario donde no hay guardia en la entrada.  En tales lugares, los ciudadanos que no tienen "beeper" no pueden participar en el "ejercicio de la libertad de expresión," religiosa o política. *Caquías*, pág. 187.  Además, los portones sin guardia violentan los altos principios que este Tribunal se ha resuelto proteger: "El derecho de la ciudadanía al uso y disfrute de los lugares públicos es básico dentro del esquema de valores de nuestro sistema democrático." *Maracaibo*, pág. 29.

Case 3:04-cv-01452-GAG-SCC   Document 1382   Filed 02/05/14   Page 15 of 44

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de
Puerto Rico, Inc.

Página -6

Municipio, a la p. 19.  El hecho de que BCC se sintió obligado a pedir permiso al gobierno para cumplir con el reglamento de control de acceso dice mucho de lo que BCC entiende es la naturaleza de sus calles.  BCC solicitó el permiso para cumplir con el reglamento de permisos del régimen de Control de Acceso, y deberá también cumplir con la normativa constitucional que permite que los ciudadanos tengan acceso a las calles.

En esencia, el argumento del Municipio de Dorado es que, a pesar de  reconocer que las calles en Puerto Rico son públicas, en el caso de BCC no lo son porque: 1. El desarrollador del proyecto suscribió una escritura de restricciones y servidumbre donde declara las calles privadas aún luego de la venta de las residencias individuales; 2. BCC y el Municipio acordaron que éste último endosaba el proyecto siempre y cuando mantuviera las calles privadas y el municipio no invirtiera en ellas. Invitan a este Honorable Tribunal a concluir que eso constituye una  desafectación  del carácter público de las calles de BCC. Respetuosamente sostenemos que aceptar dicho interpretación  equivale a permitir circunvalar  la letra clara  del código civil, art. 255 y 256,  31 LPRA § 1024,1025,  así como la política pública expresada tanto en la Ley Hipotecaria, Artículo 93, sobre requisito a todo desarrollo urbano previo inscripción la segregación de parcelas para uso común o públicos, 30 LPRA §2314, y la Ley de Control de Acceso reconociendo el carácter público de las calles. 23 LPRA §64.Una vez construidas las calles advienen públicas.

Que el desarrollador del proyecto haya hecho constar en escritura pública que las calles serán privadas no puede cambiar el estado de derecho vigente como propone el Municipio de Dorado y BCC invocando la existencia de una servidumbre en equidad.  Ciertamente nuestro ordenamiento reconoce las servidumbres en equidad como restricciones a la propiedad. No obstante las servidumbres en equidad, que se constituyen unilateralmente, serán válidas siempre que no sean contrarias a derecho y al orden público. *Glines v. Matta*, 19 D.P.R. 409 (1913).[los tribunales generalmente deben hacer cumplir las servidumbres en equidad si no son contrarias al orden público y no producen verdaderas injusticia.] La expresión unilateral de un desarrollador de un proyecto urbano de residencias que las calles serán privadas de por sí no

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -7

---

puede cambiar el estado de derecho vigente en cuanto a la naturaleza pública de las calles. Eso le corresponde a la legislatura.

Igual análisis merece el acuerdo entre el Municipio de Dorado y la BCC de no transferir las calles al municipio, y que BCC se encargue de los gastos. Esto no puede constituir un cambio o desafectación de la naturaleza pública de las calles como propone el Municipio de Dorado. En primer lugar, el Municipio de Dorado no ha provisto certificación del Registro de la Propiedad certificando que la Escritura Pública Núm. 6 de Segregación, Inscripción Parcial, Liberación y Cesión (Ap. De los Recurrentes XI-4 Docket 1087 -4) y otorgada el 3 de abril 2012, haya sido calificada por el Registrador e inscrita en el Registro de la Propiedad. El record ante este Honorable Tribunal no contiene evidencia alguna de que las escrituras hayan tenido acceso registral. La presentación de la escritura pública ante el Registro de la Propiedad no garantiza su inscripción. En segundo lugar, esta Honorable Curia al evaluar si un terreno cambió su naturaleza de dominio público a uno patrimonial, procedió a examinar la legislación existente que fue definiendo el carácter del terreno en controversia a través de la historia. Solo así concluyó que mediante legislación en efecto había cambiado su naturaleza. *San Gerónimo Caribe Project, Inc., v. E.L.A.* 174 D.P.R. 518 (2008). En el caso ante nos, la legislación vigente apunta a la naturaleza pública de las calles. No ha cambiado el derecho en este aspecto. Ciertamente la expresión unilateral del dueño del predio, aún elevada dicha expresión a escritura pública, no puede resultar en la desafectación alegada. Tampoco el que se ponga de acuerdo el dueño del predio y el Alcalde del Municipio de Dorado. (Ver discusión sobre Naturaleza de la calles públicas en Puerto Rico- sección B).

La alegación de BCC de que ellos son "una comunidad privada" no les exime del claro lenguaje estatutario del régimen de Control de Acceso. El control de acceso que la Asamblea Legislativa autorizó aplica al "uso público de las calles en urbanizaciones y comunidades residenciales públicas o privadas." 23 L.P.R.A § 64, Ley Núm. 21, 20 de mayo 20, 1987, según enmendado por el art. 1 de la Ley Núm. 156, de 10 de agosto 1988) (énfasis nuestro). Dorado no cita precedente alguno en apoyo a su postura. Más bien, alega que los derechos

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -8

constitucionales deben ceder a las leyes sobre la propiedad.[2]  Por ejemplo, Dorado admite que "[l]as condiciones restrictivas limitan los derechos propietarios del titular."  Alegato de Municipio, pág. 6.  No obstante, no toman en cuenta que tales disposiciones sólo "limitan las facultades de los futuros adquirentes." *Asociación de Vecinos de Villa Caparra, Inc. V. Iglesia Católica*, 117 D.P.R. 346, (1986).  No afectan el derecho a la libertad de expresión de terceros.

Aún de  aceptar que Dorado y BCC pueden válidamente designar  las calles de BCC como privadas, esto no puede tener el efecto de  prohibir la expresión de ideas religiosas en las calles de BCC. Esto  violenta el dictamen claro y reiterado de este Tribunal en protección  de los derechos constitucionales: "En ningún  momento se puede negar  el acceso  a las calles controladas para el ejercicio de actividades constitucionalmente protegidas, tales como: la libertad de expresión, libertad de asociación, libertad de culto, entre otras." *Luis A. Nieves y Otros v. AM Contractors, Inc. y Otros*, 166 D.P.R. 399, 422 (2005).

Dorado no puede delegar una función pública a un ente privado sin que las limitaciones propias que tiene el estado para reglamentar le sean extensivas. *Evans*, supra. Emitir un permiso de control de acceso y después prohibir el acceso a las calles controladas bajo tal permiso es una acción estatal (state action) sujeto a las limitaciones constitucionales que le son extensivas al estado. Un acuerdo entre el municipio de Dorado y la urbanización, como alega tener BCC y el Municipio de Dorado, no puede interferir con el derecho constitucional a la libre expresión religiosa. *Marsh*, supra. Tampoco altera la naturaleza pública  de las calles.

## B.  LA NATURALEZA DE LAS CALLES PÚBLICAS EN PUERTO RICO

### 1. Derecho Vigente

En respuesta a la certificación ante esta curia, podemos decir sin ambigüedades que conforme al estado de derecho vigente, las calles en Puerto Rico son públicas por disposición expresa de ley. Las calles son públicas  ya sea porque pertenecen  al estado o por  su uso

---

[2]  En nuestro Código civil domina la idea de que el titular de un derecho de propiedad puede excluir a todo extraño del uso y disfrute de la cosa a la vez que  reconoce limitaciones establecidas en ley …"La propiedad concede  derecho de gozar  y disponer  de las cosas  sin más  limitaciones  que las establecidas en ley"  Art. 280, Código Civil de PR.(31 L.P.R.A. §1111).

Case 3:04-cv-01452-GAG-SCC   Document 1382   Filed 02/05/14   Page 18 of 44

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -9

---

público.[3] Desde el siglo XIX, cuando se hizo extensivo a Puerto Rico el Código Civil Español, se conceptuaron las calles como públicas. En *Asoc. Pro Control de Acceso vs Cardona*, supra, el Tribunal expreso:

> "Las calles son bienes de dominio y usos públicos, independientemente de la jurisdicción bajo la cual se encuentren, sea esta municipal o estatal. Este carácter público de las calles se desprende de nuestro Código Civil, Arts. 255 y 256 (31 LPRA secs. 1024 y 1025) y se remonta a los tiempos de Las Partidas del rey Alfonso el Sabio." Citas omitidas, págs. 711-712.

Por su parte, la <u>Ley Hipotecaria y del Registro de la Propiedad</u> de Puerto Rico, según enmendada, en caso de desarrollo urbano de fincas dispone como sigue:

> "En caso de cualquier desarrollo urbano de una finca, no podrá registrarse segregación alguna, sin que antes se presenten los documentos en que se segreguen las parcelas dedicadas al uso común o público, y en que se consigne la cabida del resto del área destinado a estos propósitos con arreglo al plano e informes aprobados en el Registro de Planos" Artículo 93, 30LPRA§ 2314.

Su lenguaje es claro. No es ambiguo. No requiere de interpretación. Está en armonía con lo dispuesto en el Código Civil.

De forma similar y cónsono con lo anterior, el art. 101.1 del <u>Reglamento Hipotecario</u> especifica que:

> "Serán segregados previamente a cualquier otras parcelas, aquellas que de acuerdo con el plano aprobado por las agencias gubernamentales concernidas, deban segregarse para ser destinadas al uso común o público. Se hará constar mediante nota marginal el área destinada a los mismos propósitos para cuya segregación no se hubiese exigido." Artículo 101.1 sección 870.377 aprobado el 13 de julio 1980.

Contrario a lo alegado por el Municipio de Dorado, el claro lenguaje estatutario antes citado, **provee un requerimiento legal**. No se trata de una facultad o prerrogativa del desarrollador o municipio porque el cumplimiento de las leyes no debe dejarse al arbitrio de las partes. El Municipio de Dorado cita *Soto Santiago v. Monacillos Center*, 2011 TA 1274 del 29 de abril 2011, en apoyo a su posición de que el estado no tiene que condicionar la aprobación de un proyecto a la transferencia gratuita de propiedad para uso público. Sin embargo dicha sentencia es distinguible en los hechos al caso de autos y apoya la posición que aquí adelantamos. En *Soto Santiago*, supra se trataba de un proyecto comercial; <u>no un proyecto</u>

---

[3] Ciertamente existen caminos privados dentro de una propiedad, que no son ni deben considerarse calles salvo que se utilicen para uso público, pero no son los objetos de consideración en este caso.

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -10

urbano de residencias por lo que no aplicaba la Ley de Control de Acceso.  El Tribunal de Apelaciones resolvió que no había para ese tipo de proyecto requisito en ley que obligara al dueño de la propiedad segregada (para fines comerciales de desarrollo no destinado a residencias) construir y dedicar a uso público vías y derecho de paso a su entero costo gravamen. En ese contexto fáctico es que el tribunal se expresa que no tiene que condicionarse a la dedicación a uso público para que el gobierno lo apruebe. Claramente una lectura a la Ley Hipotecaria y su reglamento, como la Ley de Control de Acceso hacen evidente que ambas contienen un requerimiento en ley de segregar parcelas para uso público, y mantener el carácter público de las calles de un desarrollo urbano como el de BCC.   Art. 93 Ley Hipotecaria, 30 L.P.R.A. §2314;*Caquías Mendoza v. Aso. de Residentes Mansiones de Río Piedras*, 134 D.P.R. 181 (1993).

Finalmente, la Ley de Control de Acceso, *supra*, sostiene que la restricción de acceso no altera el carácter público de las calles y aceras. Por ello, en 1992 la Asamblea Legislativa de Puerto Rico, al modificar la Ley de Control de Acceso para permitir que los municipios participaran en el proceso, reiteró que el acceso podía controlarse en "urbanizaciones y comunidades residenciales, públicas o privadas." 23 L.P.R.A § 64, § 1 (énfasis nuestro). De modo que, llámese a una urbanización de "pública" o "privada," el punto relevante bajo la Ley Núm. 21 es que el acceso sólo puede controlarse, no prohibirse.

Incluso, irrespectivo de la titularidad de las calles, el ordenamiento legal en Puerto Rico establece que los terrenos donde ubican las calles o carreteras y plazas públicas "que por su naturaleza son susceptibles de propiedad particular, pierden esa cualidad como consecuencia de la aplicación que de ellas se hace para fines incompatibles con la propiedad privada...". Art. 274 Código Civil de Puerto Rico (31 LPRA sec. 1082).

Si alguna duda existe de que las calles en Puerto Rico son públicas ha sido disipada jurisprudencialmente. Véanse: *Asoc. Pro Control de Acceso v Cardona*, supra; *Caquías Mendoza*, supra,; *Armstrong vs ELA*, 97 DPR 588 (1969); *Gobierno de la Capital v Consejo Ejecutivo*, 63 DPR 434 (1944); *Saldaña v El Consejo Municipio*, 15 DPR 37 (1909).

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -11

---

### 2. Régimen de Control de Acceso preserva carácter público de las calles.

Al dictaminar sobre el régimen de Control de Acceso, este Tribunal vez tras vez ha protegido el derecho de los ciudadanos a tener acceso a las calles residenciales. En su primera expresión sobre el régimen de control de acceso, este Tribunal resolvió que "[e]l concepto de control de acceso implica que se preserva *la naturaleza pública de las calles residenciales*". *Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedras*, 134 D.P.R. 181, (1993) (énfasis en el original). Además, este Tribunal reiteró que "las calles son bienes de uso público y que en el pasado, a los efectos del ejercicio de la libertad de expresión, las hemos considerado foros públicos." *Id.*, pág. 187. De conformidad, el Tribunal falló que "el permiso que otorga un municipio a una asociación de residentes para controlar el acceso a las calles residenciales de su urbanización *debe interpretarse e implantarse de conformidad con la naturaleza pública de esas vías.*" *Id.*, págs. 207-208 (énfasis en el original). Por eso, al solicitar y aceptar el permiso de control de acceso, BCC reconoció en cuanto a sus calles, que "a los efectos del ejercicio de la libertad de expresión, las hemos considerado foros públicos." *Id.*, pág. 187.

En la siguiente ocasión que este Honorable Tribunal se expresó sobre el régimen de Control de Acceso, este no cedió terreno en su defensa de la libertad de expresión: "Recalcamos, la ley no permite que se impida indiscriminadamente el acceso". *Asoc. Pro Control de Acceso Calle Maracaibo*, pág. 28. Resolvió además que "si algún reglamento aprobado por alguna asociación de residentes infringe derechos constitucionalmente protegidos, tal reglamento será invalidado." *Id.*, págs. 27-28.

De igual forma, el Tribunal Federal expresó con elocuencia lo que por mucho tiempo ha sido la normativa en Puerto Rico sobre las calles y carreteras:

> La Asamblea Legislativa de Puerto Rico instituyó el Código Civil, el cual requiere que todas las calles y carreteras sean públicas y permanezcan disponibles para el uso público. Tales disposiciones han tenido vigencia desde la versión de 1930 del Código Civil de Puerto Rico. El mismo garantiza que todas las carreteras de la Isla se mantengan y permanezcan abiertas para uso público. … De modo que la ley de Puerto Rico requiere que todas las carreteras de la Isla sean públicas. (Docket Núm. 1074, pág. 9) (traducción nuestra).

De lo anterior tan solo puede colegirse que el estado de Derecho actual en Puerto Rico es que las calles son de uso público y, por ende son públicas.

Case 3:04-cv-01452-GAG-SCC   Document 1382   Filed 02/05/14   Page 21 of 44
Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -12

Al alegar que las calles de BCC no son públicas, Dorado pasa por alto el hecho de que las calles y aceras de Puerto Rico son bienes para uso y dominio público. 31 L.P.R.A. §§ 1024 y 1025; véase *Saldaña et al. v. El Consejo Municipal de San Juan, et al.*, 15 D.P.R. 37, 8 (1909); ("[L]as calles, aceras, [y] plazas de la ciudad ... han sido destinadas al uso de los habitantes de la ciudad, y todos y cada uno de ellos desde el Gobernador, en su palacio, hasta el limosnero en su choza, tienen derecho al uso libre y continuado de las mismas.")

**3. Acto ultra vires de Dorado-** El intento del Municipio de  Dorado de deshacer la naturaleza pública de las calles en este caso de BCC es acto *ultra vires*. En la medida  que  el Municipio  de Dorado ha consentido y promovido que las calles de BCC son privadas, y  que están exentas de cumplir con las órdenes del Tribunal Federal, como argumentan ante este Honorable Tribunal  actúan sin autoridad  legítima para hacerlo.

> "Cualquier acto del consejo de la ciudad por el que se trate de autorizar la construcción de un edificio sobre una de las aceras de esta ciudad es ultra vires, nulo y sin ningún valor; y cualquier ciudadano puede recurrir á los tribunales para que se le proteja contra un acto tan ilegal." *Id.*, pág. 8.

La actuación *ultra vires* del Municipio de Dorado no puede ser sancionado por este Tribunal. De hacerlo, tendría como consecuencia permitir que otras urbanizaciones   y municipios siguieran el mismo curso que ha optado seguir el Municipio de Dorado evadiendo la responsabilidad de respetar la garantía constitucional de la libertad de expresión. Fomentaría y nada impediría que los municipios concedan permiso de control de acceso aceptando condiciones contrarias a derecho, como la involucrada en el caso de BCC.  Esto animaría a otras urbanizaciones que han recibido permisos de control de acceso a reclamar que estas también son "privadas", o alegar que pueden negar el acceso puesto que, aunque sus comunidades llevan años de establecidas, sus carreteras no han sido transferidas al municipio. (Véase Docket Núm. 1132, pág. 2, que cita Docket Núm. 1087, pág. 5, párrafo 16) (traducción nuestra); véase también *Omega Development Corp. v. Asociación de Propietarias de Vistamar Marina, Inc.*, 2000 T.C.A. 1079, 9 ("Tampoco era necesario que el desarrollador destinara la calle Andalucía como fin público pues una vez construida la urbanización las calles advienen públicas.") Tal proceder frustraría el interés público que tanto este Tribunal como la Asamblea

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de
Puerto Rico, Inc.

Página -13

Legislativa han expresado. Permitir que los municipios y las urbanizaciones o desarrolladores
de proyectos de desarrollo urbano acuerden condiciones contrarias a lo dispuesto en la Ley de
Control de Acceso, el Código Civil y la Ley Hipotecaria y su reglamento puede desembocar en
un descontrol en la planificación urbana y afectar adversamente la capacidad central de
planificación de terrenos en Puerto Rico. [4]

## V. CONCLUSIÓN Y SÚPLICA:

Darle validez a una delegación *sui generis* del poder del estado a un desarrollador de un
proyecto urbano de residencias, para excluirlo de los requisitos aplicables al estado al ejercer
dicha función, **es un precedente sumamente peligroso** que atenta contra el ordenamiento
vigente y la política pública de planificación uniforme. De conformidad con las leyes,
reglamentos y jurisprudencia citada, los Recurridos respetuosamente solicitan que el Tribunal
Honorable conteste en la negativa la interrogante, "Permiten las leyes de Puerto Rico la
existencia de carreteras privadas?". Corresponde a la legislatura, y no a esta Curia cambiar el
estado de derecho vigente, si se ha de permitir o no que existan calles privadas en desarrollos
de proyectos urbanos, particularmente bajo la Ley de Control de Acceso y bajo qué
circunstancias y condiciones han de regirse.

Los Recurridos también respetuosamente solicitan que el Tribunal dictamine que, las
calles son de uso público independientemente de su titularidad, sujetas a las restricciones del
estado y por ende no se puede impedir la libertad de expresión sobre las calles residenciales.

### RESPETUOSAMENTE SOMETIDO,

En San Juan, Puerto Rico a 4 de noviembre de 2013.

## VI. CERTIFICACIÓN

En esta misma fecha, copia fiel y exacta de esta Moción se ha enviado por correo regular a:
**Lcdo. Héctor Rivera Cruz**, P.O. Box 9023954, Old San Juan Station, San Juan, PR 00902-

---

[4] Los condominios y hoteles turísticos no serán afectados por el dictamen del Tribunal sobre la
interrogante de si las urbanizaciones que reciben permiso de Control de Acceso tienen la obligación de proveer
acceso a ciudadanos que desean ejercer su libertad de expresión.

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -14

---

3954; **Lcdo. IVÁN PASARELL JOVÉ,** P.O. Box 9021612,San Juan, PR   00902-1612;**LCDO. CLAUDIO ALIFF-ORTIZ,** ALB Plaza #16,Carr. 199 Suite 400, Guaynabo, PR 00969; **LCDO. MICHAEL C. MCCALL,** P.O. Box 362634, San Juan, PR   00936-2634; **LCDO. LUIS E. PABÓN-ROCA y LCDO. CLARISA SOLÁ-GÓMEZ,** P.O. Box 11397,Fernández Juncos Station,San Juan, PR   00910-2497;**LCDO. PEDRO R. VÁZQUEZ, III,** Office, 405 Esmeralda, Ave. Suite 2 PMB 153,Guaynabo, PR   00969; **LCDO. RAFAEL E. RIVERA-SÁNCHEZ;** P.O. Box 191884,San Juan, PR   00919-1884; **LCDO. EDGAR HERNÁNDEZ-SÁNCHEZ,** P.O. Box 364966, San Juan, PR 00936-4966; **LCDA. ROSA M. CRUZ-NIEMIEC,** P.O. Box 195498,San Juan, PR   00919-5498;**LCDO. ROBERT MILLÁN,**Calle San José #252,San Juan, PR   00901;**LCDA. GISELLE M. MARTÍNEZ-VELÁZQUEZ,** Urb. EI Cerezal, 1684 Calle Paraná, San Juan, PR   00926. **UNITED STATES DISTRICT COURT OF PUERTO RICO,** Edif. Federal Ave. Chardón, Suite 150, San Juan PR 00918-1767.

En San Juan Puerto Rico a 4 de noviembre 2013.

**Versión del Alegato con correcciones incluidas, Anejo 1 de Moción Sobre Fe de Errata del 31 de enero 2014.**

*(firma)*

**NORA VARGAS ACOSTA**
Edificio First Federal
1056 Avenida Muñoz Rivera, Suite 1004
Rio Piedras, PR  00927-5026
Tels. 787-751-7485
787-525-5514
Fax. 787-751-7485
nvargasacosta@onelinkpr.net

**NORA VARGAS-ACOSTA**
RUA Núm. 7824

**PAUL D. POLIDORO***
Watchtower Legal Department
100 Watchtower Drive
Patterson, NY  12563
Tel. 845-306-1000
Fax. 845-306-0709
ppolidor@jw.org

**PAUL D. POLIDORO**
*Solicitud de admisión de cortesía pendiente ante este Tribunal

Estado Libre Asociado de Puerto Rico
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL SUPREMO**

| | | |
|---|---|---|
| **WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.**, *et. al.* *Recurridos* | | **CASO ORIGINAL:** 04-1452 (GAG) |
| v. | CT-2013-0014 | **SOBRE:** CERTIFICACIÓN |
| **MUNICIPIO DE DORADO**, *et. al.* | | |
| **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO** *Peticionarios* | | |

NATURALEZA:        CERTIFICACIÓN INTERJURISDICCIONAL

MATERIA:        LEY DE CONTROL DE ACCESO

ASUNTO:        NATURALEZA JURÍDICA DE LAS CALLES

ALEGATO DE LA PARTE RECURRIDA

**PETICIONARIOS**

**MUNICIPIO DE DORADO**
**BUFETE HÉCTOR RIVERA CRUZ**
P.O. Box 9023954
Old San Juan Station
San Juan, PR  00902-3954
Tels. 787-722-8825
787-723-1061

**HÉCTOR RIVERA CRUZ**
RUA Núm. 4634
bufetehectorriveracruz@gmail.com

**IVÁN PASARELL JOVÉ**
RUA Núm. 12692
P.O. Box 9021612
San Juan, PR  00902-1612
Tel. 787-647-4826
Fax. 787 -722-5206
ipasarell@yahoo.com

**UNITED STATES DISTRICT COURT OF PUERTO RICO**
Edif. Federal
Ave. Chardón, Suite 150
San Juan PR  00918-1767

*Anejo 2 de Parte Recurrida*
*Alegato de Parte Recurrida*
*Presentado 4/nov./2013*

**RECURRIDOS**

**WATCHTOWER BIBLE AND TRACT SOCIETY**
**OF NEW YORK, INC.**

**CONGREGACIÓN CRISTIANA DE LOS TESTIGOS**
**DE JEHOVAH DE PUERTO RICO, INC.**

**NORA VARGAS-ACOSTA**
RUA Núm. 7824
First Federal Bldg. Suite 1004
1056 Muñoz Rivera Ave
San Juan, PR  00927
Tels. 787-751-7485
787-525-5514
Fax. 787-751-7485
nvargasacosta@onelinkpr.net


**PAUL D. POLIDORO**
Watchtower Legal Department
100 Watchtower Drive
Patterson, NY  12563
Tel. 845-306-1000
Fax. 845-306-0709
ppolidor@jw.org

<u>OTROS PARTICIPANTES ANTE EL TRIBUNAL FEDERAL</u>

**LCDO. CLAUDIO ALIFF-ORTIZ**
RUA Núm. 8771
ALB Plaza #16
Carr. 199 Suite 400
Guaynabo, PR  00969
Tel. 787-474-5447
Fax. 787-474-5451
califf@alblegal.net


**LCDO. MICHAEL C. MCCALL**
(No postula en Tribunal de E.L.A  de PR)
P.O. Box 362634
San Juan, PR  00936-2634
Tel. 787-232-4530
Fax. 787-777-0737
michaelm@caribe.net


**LCDO. LUIS E. PABÓN-ROCA**
RUA Núm. 11048
facciopabonroca@microjuris.com


**LCDA. CLARISA SOLÁ-GÓMEZ**
RUA Núm. 11149
facciopabonroca@microjuris.com
P.O. Box 11397
Fernández Juncos Station
San Juan, PR  00910-2497
Tel. 787-764-1800
Fax. 787-777-0737

LCDO. PEDRO R. VÁZQUEZ, III
(No postula en PR)
Office, 405 Esmeralda
Ave. Suite 2 PMB 153
Guaynabo, PR  00969
Tel. 787-925-4669
Fax. 787-789-3340
prvazquez@hotmail.com


LCDO. RAFAEL E. RIVERA-SÁNCHEZ
RUA Núm. 14454
P.O. Box 191884
San Juan, PR  00919-1884
Tel. 787-528-2062
Fax. 787-728-5505
rafaelrivera.lawoffice@gmail.com


LCDO. EDGAR HERNÁNDEZ-SÁNCHEZ
RUA Núm. 9908
P.O. Box 364966
San Juan, PR  00936-4966
Tel. 787-767-9625
Fax. 787-622-2229
e_hernandez@cnrd.com


LCDA. ROSA M. CRUZ-NIEMIEC
RUA Núm. 9041
P.O. Box 195498
San Juan, PR  00919-5498
Tel. 787-777-0495
Fax. 787-777-0439
cnvlaw@gmail.com


LCDO. ROBERT MILLÁN
RUA Núm. 8238
Calle San José #252
San Juan, PR  00901
Tel. 787-725-0946
Fax. 787-725-0946
rmi3183180@aol.com


LCDA. GISELLE M. MARTÍNEZ-VELÁZQUEZ
Urb. El Cerezal 1684
Paraná St.
San Juan, PR  00926
Giselle.martinez@gmail.com

Estado Libre Asociado de Puerto Rico
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL SUPREMO

| | | |
|---|---|---|
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., *et. al.* *Recurridos* v. MUNICIPIO DE DORADO, *et. al.* UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO *Peticionarios* | CT-2013-0014 | CASO ORIGINAL: 04-1452 (GAG) SOBRE: CERTIFICACIÓN |

## ÍNDICE DE MATERIAS

MATERIA                                                                 PÁGINA(S)

I.   JURISDICCIÓN DEL TRIBUNAL ............................................................... 1

II.  LA CUESTIÓN DE DERECHO ANTE EL TRIBUNAL ............................................ 1-3

III. TRASFONDO DEL LITIGIO SOBRE EL CONTROL DE ACCESO ...................... 3-4

IV.  ARGUMENTACIÓN ........................................................................ 5-13

    A. LA NATURALEZA DE LA URBANIZACIÓN BRIGHTON COUNTRY CLUB ................................................................................. 5-8

    B. LA NATURALEZA DE LAS CALLES PÚBLICAS EN PUERTO RICO ...... 9-13

        1. Derecho Vigente ............................................................... 8-10

        2. Régimen de Control de Acceso preserva Carácter público de las calles ...... 11-12

        3. Dorado actuó ultra vires ............................................................. 12-13

V.   CONCLUSIÓN Y SÚPLICA .................................................................. 13-14

VI.  CERTIFICACIÓN ............................................................................. 14-15

Estado Libre Asociado de Puerto Rico
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL SUPREMO

| | | |
|---|---|---|
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., *et. al.* *Recurridos* <br><br> v. <br><br> MUNICIPIO DE DORADO, *et. al.* <br><br> UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO *Peticionarios* | CT-2013-0014 | CASO ORIGINAL: 04-1452 (GAG) <br><br> SOBRE: CERTIFICACIÓN |

## ÍNDICE LEGAL

MATERIA                                                                                                PÁGINA(S)

### I.   JURISPRUDENCIA

**TRIBUNAL SUPREMO DE PUERTO RICO**

*Asoc. Pro Control de Acceso Calle Maracaibo, Inc. v. Cardona Rodríguez*, 144 D.P.R. 1 (1997)..................................................................................................,2,4,9,10,11

*Asoc. Vecinos de Villa Caparra, Inc., v . Iglesia Católica*, 117 D.P.R. 346 (1986) ..........................................................................................8

*Armstrong v. E.L.A.* , 97 D.P.R. 588 (1969)........................................................10

*Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedras*, 134 D.P.R. 181 (1993) ..........................................................................5,10,11

*Luis A. Nieves y Otros v. AM Contractors, Inc. y Otros*, 166 D.P.R. 16 (2005) ..........................8

*Glines v. Matta*, 19 D.P.R. 409 (1913)...............................................................6

*Gobierno de la Capital v. Consejo Educativo*,63 D.P.R. 434 (1944)...............................10

*Saldaña et al. v. El Consejo Municipal de San Juan, et al.*, 15 D.P.R. 37 (1909).............10,12

*San Gerónimo  Caribe Project , Inc. v. E.L.A.*........................................................7

*UIET v. Empresas Puertorriqueñas* , 150 D.P.R. 1 (2000)..............................................3


**TRIBUNAL DE APELACIONES DE PUERTO RICO**

*Omega Development Corp. v. Asoc. de Propietarias de Vistamar Marina, Inc.*, 2000 T.C.A. 1079..........................................................................................12

*Soto Santiago v.  Monacillos  Center* , 2011 TA 1274 ................................................9

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -2

---

## TRIBUNAL SUPREMO DE ESTADOS UNIDOS

*Evans vs. Newton,* 382 US 296

  (1966)…………………………………............………………………………………………3

*Marsh vs. Alabama,* 326 US 501 (1946)…………………………………………………2,3

*Shelley vs. Krammer,* 334 US 1

(1948)………………………………………………………………………..……………3

*Watchtower vs: Village of Stratton,* 536 U.S. 150 (2002)………………………………3

## TRIBUNAL FEDERAL DE APELACIONES

*Watchtower et al vs. Segardía et al.,* Escrito de los Demandantes-Recurrentes ante el Tribunal de

  Apelaciones del Primer Circuito de los Estados Unidos, 09-2273 (2010)………………………3

*Watchtower Bible & Tract Soc'y of N.Y., Inc. vs. Segardía de Jesús,*

634 F. 3d 3 (1st Cir. 2011)………………………………………………………………………4

## II.   LEGISLACIÓN Y REGLAMENTACIÓN

Código Civil de Puerto Rico, Arts. 255 y 256 (31 L.P.R.A. §§ 1024 y 1025)… ……………..6,11

Código Civil de Puerto Rico, Art, 274(31 L.P.R.A §1082 ……………………………………10

Código Civil de Puerto Rico, Art. 280  (31 L.P.R.A. §1111)……………………………….....8

Ley Hipotecaria y del Registro de la Propiedad, Artículo 93 , 30 L.P.R.A. 2314……….. 6,9, 10

Reglamento Hipotecario Artículo 101.1 § 870.377 aprobado 13 de julio 1980 ……….…..…..9

Ley de Control de Acceso, Ley Núm 21 de 20 de mayo de 1987,

según enmendada, 23 LPRA §§ 64, *et. seq*……………………………………………1,3,6,7,10

Ley de Condominios, 31 L.P.R.A. 1291………………………………………..……………….2

Estado Libre Asociado de Puerto Rico
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL SUPREMO

| | | |
|---|---|---|
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., *et. al.* *Recurridos* v. MUNICIPIO DE DORADO, *et. al.* UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO *Peticionarios* | CT-2013-0014 | CASO ORIGINAL: 04-1452 (GAG) SOBRE: CERTIFICACIÓN |

ALEGATO DE WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. y CONGREGACIÓN CRISTIANA DE LOS TESTIGOS DE JEHOVÁ DE PUERTO RICO, INC.

AL HONORABLE TRIBUNAL:

COMPARECEN los Recurridos WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., y la CONGREGACIÓN CRISTIANA DE LOS TESTIGOS DE JEHOVÁ DE PUERTO RICO, INC., y respetuosamente responden a la petición del Municipio de Dorado.

## I. JURISDICCION DEL TRIBUNAL

El pasado 17 de julio 2013, este Honorable Tribunal acogió la Solicitud de Certificación Interjurisdiccional presentada por la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico. La parte Recurrente, Municipio de Dorado presentó su Alegato el pasado 25 de septiembre 2013. Los Recurrentes Watchtower Bible and Tract Society y la Congregación Cristiana de los Testigos de Jehová le solicitaron a este Honorable Foro un término adicional de cinco días laborables para presentar su Alegato.

## II. LA CUESTIÓN DE DERECHO ANTE EL TRIBUNAL

La interrogante que certifica el Tribunal Federal a esta Honorable Curia, si las leyes de Puerto Rico permiten la existencia de calles privadas, surge en un contexto muy específico. Se presenta en el contexto de urbanizaciones que, después de recibir permiso para instalar sistemas de control de acceso bajo la Ley de Control de Acceso, 23 LPRA §§ 64-64(h) (2008), rehúsan acatar la directiva del Tribunal de que "[l]as asociaciones de

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -2

---

residentes tienen que tener presente que no podrán denegar el acceso a las calles controladas para el ejercicio de actividades constitucionalmente protegidas." *Asociación Pro Control de Acceso Calle Maracaibo, Inc. v. Cardona Rodríguez*, 144 D.P.R. 1, n.14 (1997).

El caso ante la consideración del Tribunal Federal sólo aplica a urbanizaciones que, como el Brighton Country Club ("BCC"), <u>recibieron permiso para controlar el acceso bajo la Ley de Control de Acceso de Puerto Rico</u>. No existe una controversia bajo la Ley de Condominios (31 LPRA sec. 1291); tampoco por acceso a hoteles turísticos como el Ritz Carlton Reserve y el Ponce Hilton. Los Testigos de Jehová sólo piden poder entrar a las calles residenciales cerradas bajo la Ley de Control de Acceso, con el fin de poder ejercer sus derechos constitucionales a la libertad de expresión religiosa en un foro público tradicional como son las calles.

BCC rehúsa permitir que sus conciudadanos, personas que sólo desean compartir un mensaje de esperanza y consuelo de la Biblia, accedan a calles residenciales de la urbanización cuya entrada han cerrado con portones (después de haber solicitado y recibir el permiso de control de acceso). En defensa de esta urbanización, el Municipio de Dorado presenta un escrito alegando que no se trata de calles públicas porque jamás le fueron cedidas al municipio, y que medió la desafectación de las calles públicas "cuando el Municipio de Dorado condicionó su endoso a que las calles ..... dentro del predio del proyecto mantuvieran su naturaleza privada". Alegato de Municipio de Dorado , p. 14. Por ende alegan, BCC como ente privado titular de las calles, puede negarles acceso a los Testigos de Jehová a sus calles.

Muy respetuosamente sometemos que la posición del Municipio de Dorado es contrario al estado de derecho vigente en Puerto Rico, donde surge con meridiana claridad que las calles por disposición de ley son públicas; que el Municipio no puede desafectar el carácter público de las calles de las urbanizaciones sometidas al régimen bajo la Ley de Control de Acceso y sujetas la Ley Hipotecaria, y el Reglamento que la implementa como pretende hacerlo. A falta de legislación al contrario, las calles en Puerto Rico son de naturaleza pública.

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -3

---

Esta no es la primera vez que se pretende utilizar "instituciones privadas" para circunvenir lo que de otro modo le está vedado al estado. Véase; *Marsh vs Alabama*, 326 US 501 (1946),[permitiendo la distribución de literatura religiosa en un company town]"There is no more reason for depriving these people [living in private company towns] of the liberties guaranteed by the First & Fourteen Amendment than there is to curtailing these freedoms with respect to any other citizen";  *Shelley vs Krammer*, 334 US 1 (1948) [declarando ilegal una servidumbre en equidad de un urbanizador privado que prohibía la venta de la propiedad a negros]; *Evans vs Newton*, 382 US 296 (1966) [declarando ilegal la exclusión de negros de un parque privado donado al pueblo de Macon, según dispuso el testador]. *UIET vs Empresas Puertorriqueñas*, 150 D.P.R. 1 (2000) [validando el derecho de los trabajadores a manifestarse en un centro comercial privado que posee oficinas de corporaciones públicas].Cónsono con la jurisprudencia antes citada, los tribunales han concluido que cuando un ente privado (como BCC) ejerce o realiza una función gubernamental o pública, están limitados por las mismas reglas que son de aplicabilidad al estado.

Los Testigos de Jehová muy respetuosamente solicitan que este Tribunal, no abandone su tradicional defensa de la libertad de expresión y por el contrario emita un fallo que permita la difusión de ideas en toda urbanización que regule el acceso a las vías residenciales en armonía con el régimen estatutario de control de acceso vigente en el Estado Libre Asociado.

## III. TRASFONDO DEL LITIGIO SOBRE EL CONTROL DE ACCESO

A los testigos de Jehová se les conoce por su ministerio público en obediencia al mandato bíblico de predicar "de casa en casa," el cual "es un requisito de su religión." *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 160-161 (2002) (traducción nuestra).  Los testigos de Jehová "ofrecen literatura religiosa sin costo a todo a quien le interese leerla." *Id.*, pág. 153 (traducción nuestra).

Puerto Rico instituyó la Ley de Control de Acceso que permite que los vecindarios—urbanizaciones—erijan muros y portones "para el control del tráfico de vehículos de motor y

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -4

el uso público de las calles en urbanizaciones y comunidades residenciales públicas o privadas". 23 L.P.R.A. § 64 ( Ley, Núm. 21, de 20 de mayo 1987 , según enmendado por el art. 1 de la Ley Núm. 156, de 10 de agosto 1983).

A medida que aumentaba la cantidad de vecindarios en Puerto Rico que instalaban puntos de control y portones sin guardia, los testigos de Jehová se enfrentaron con que se les negaba el acceso a las calles residenciales públicas. Como observó el Tribunal de Apelaciones del Primer Circuito de los Estados Unidos:

> Desde el principio, los testigos de Jehová han reclamado que con frecuencia se les impide entrar a urbanizaciones para participar en actividades protegidas por la Constitución..... Dicen que en algunos lugares bajo control de acceso la única entrada es a través de portones cerrados y sin guardia, donde los residentes pueden optar por no dejar entrar a los visitantes; otros tienen guardias que no permiten entrar a quienes buscan prosélitos, o que prohíben la entrada a todo visitante que no haya sido autorizado directamente por un residente o por la asociación. En otros más se alega que los guardias de seguridad intermitentemente niegan el acceso a los testigos de Jehová.

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Segardía de Jesús*, 634 F. 3d 3, 7 (1st Cir. 2011) (traducción nuestra).

Por ende, el Tribunal de Apelaciones de los Estados Unidos para el primer Circuito resolvió que el régimen de Control de Acceso se estaba administrando de manera inconstitucional toda vez que le impedía a los Testigos de Jehová ejercer el ministerio público de casa en casa. En su fallo, el Tribunal Federal de Apelaciones señaló que la obstrucción de la actividad de expresión religiosa de los testigos de Jehová estaba ocurriendo por toda la Isla:

> "Tras una encuesta, los testigos de Jehová informaron que de 770 lugares de control de acceso en 59 municipios, con un total de 96,884 residencias, no pudieron entrar libremente a 587 urbanizaciones en 57 municipios, con un total de 67,095 residencias, ya fuera porque un guardia de seguridad les negó el acceso o porque no tenían manera de entrar por un portón sin guardia de seguridad." *Id.*, pág. 8 (traducción nuestra).

El caso fue referido al Tribunal de Distrito Federal para continuar con los procedimientos. Como parte de dichos procedimientos el Tribunal Federal le solicitó a los municipios que certificaran las urbanizaciones en sus municipios con control de

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -5

---

acceso que carecían de un guardia de seguridad toda vez que éstas presentaban un problema especial de acceso.[1]

## IV. ARGUMENTACION

### A. LA NATURALEZA DE LA URBANIZACIÓN BRIGHTON COUNTRY CLUB

El Municipio de Dorado incluyó a BCC entre las 7 urbanizaciones con control de acceso bajo su jurisdicción que carecían de un guardia en la entrada a la urbanización. (Docket Núm. 964, pág. 2) (traducción nuestra). Posteriormente, el Municipio informó al Tribunal Federal que BCC había solicitado "la aprobación y/o permiso del gobierno para cumplir con el reglamento" de la Ley Núm. 21. (Docket Núm. 1087, pág. 4) (traducción nuestra). Así las cosas, el Tribunal Federal para el distrito de Puerto Rico falló que "[d]urante la construcción, BCC solicitó y recibió la aprobación del gobierno bajo la Ley de Control de Acceso para construir un portón en su entrada. (Véase Docket Núm. 1087, ¶ 4.)" (Docket Núm. 1173, pág. 3) (traducción nuestra).

El Municipio de Dorado alega que BCC es una comunidad privada y que sus calles y aceras son privadas, por lo que no está sujeta a las órdenes del Tribunal Federal para el distrito de Puerto Rico como tampoco las del Tribunal Federal Apelativa para el Primer Circuito. El Municipio de Dorado argumenta que las calles de BCC son privadas desde su organización y constitución en el 2005 y que nunca han sido transferidas al municipio. Señala además que endosó el proyecto condicionado a que mantuvieran las calles de forma

---

[1] Cerca del 50% de las urbanizaciones donde los testigos de Jehová no pueden entrar tienen portones sin guardia de seguridad. Escrito de *Watchtower*, 09-2273, pág. 11. Como hizo notar el Tribunal Federal, este "Tribunal quizás tenga que determinar si los portones sin guardia de seguridad son constitucionales cuando resuelva la cuestión de las carreteras privadas." (Docket Núm. 1173, pág. 9) (traducción nuestra). Los Recurridos respetuosamente concuerdan.

Pese a que este Tribunal se ha "absten[ido] de hacer pronunciamientos sobre aquellos sistemas que no tengan guardia en una de sus entradas vehiculares", el gobierno ha seguido aprobando centenares de urbanizaciones sin guardia de seguridad. *Maracaibo*, pág. 22. El Estado Libre Asociado de Puerto Rico lo ha hecho a pesar de haber "admitido que la Ley de Control de Acceso no contempla el uso de portones sin guardia de seguridad." (Docket Núm. 1074, págs. 4 y 5, nota 4, Orden del Tribunal de Distrito que cita el Escrito del Estado Libre Asociado de Puerto Rico en oposición al recurso de Certiorari en el Tribunal Supremo de los Estados Unidos) (traducción nuestra).

El efecto de conceder permisos de portones sin guardia es convertir las calles públicas en privadas en cada vecindario donde no hay guardia en la entrada. En tales lugares, los ciudadanos que no tienen "beeper" no pueden participar en el "ejercicio de la libertad de expresión," religiosa o política. *Caquías*, pág. 187.

Además, los portones sin guardia violentan los altos principios que este Tribunal se ha resuelto proteger: "El derecho de la ciudadanía al uso y disfrute de los lugares públicos es básico dentro del esquema de valores de nuestro sistema democrático." *Maracaibo*, pág. 29.

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -6

privada. Alegato del Municipio a la p. 3 y 5. El Municipio postula, sin decirlo, que la voluntad humana puede crear *ad libitum* una figura del derecho real no legislada.

Ni BCC ni el Municipio de Dorado han explicado por qué, si sus vías residenciales son de hecho privadas, BCC solicitó permiso para controlar el acceso bajo el régimen de Control de Acceso del Estado Libre Asociado, y en efecto consignó como requisito la obtención de los permisos en su Escritura número 1 sobre Condiciones Restrictivas. Ap. XI - 1 Alegato del Municipio, a la p. 19. El hecho de que BCC se sintió obligado a pedir permiso al gobierno para cumplir con el reglamento de control de acceso dice mucho de lo que BCC entiende es la naturaleza de sus calles. BCC solicitó el permiso para cumplir con el reglamento de permisos del régimen de Control de Acceso, y deberá también cumplir con la normativa constitucional que permite que los ciudadanos tengan acceso a las calles.

En esencia, el argumento del Municipio de Dorado es que, a pesar de reconocer que las calles en Puerto Rico son públicas, en el caso de BCC no lo son porque: 1. El desarrollador del proyecto suscribió una escritura de restricciones y servidumbre donde declara las calles privadas aún luego de la venta de las residencias individuales; 2. BCC y el Municipio acordaron que éste último endosaba el proyecto siempre y cuando mantuviera las calles privadas y el municipio no invirtiera en ellas. Invitan a este Honorable Tribunal a concluir que eso constituye una desafectación del carácter público de las calles de BCC. Respetuosamente sostenemos que aceptar dicho interpretación equivale a permitir circunvalar la letra clara del código civil, art. 255 y 256, 31 LPRA § 1024,1025, así como la política pública expresada tanto en la Ley Hipotecaria, Artículo 93, sobre requisito a todo desarrollo urbano previo inscripción la segregación de parcelas para uso común o públicos, 30 LPRA §2314, y la Ley de Control de Acceso reconociendo el carácter público de las calles. 23 LPRA §64.Una vez construidas las calles advienen públicas.

Que el desarrollador del proyecto haya hecho constar en escritura pública que las calles serán privadas no puede cambiar el estado de derecho vigente como propone el Municipio de Dorado y BCC invocando la existencia de una servidumbre en equidad. Ciertamente nuestro ordenamiento reconoce las servidumbres en equidad como restricciones

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -7

puede cambiar el estado de derecho vigente en cuanto a la naturaleza pública de las calles.  Eso le corresponde a la legislatura.

Igual análisis merece el acuerdo entre el Municipio de Dorado y la BCC de no transferir las calles al municipio, y que BCC se encargue de los gastos.  Esto no puede constituir un cambio o desafectación de la naturaleza pública de las calles como propone el Municipio de Dorado.  En primer lugar,  el Municipio de Dorado no ha provisto certificación del Registro de la Propiedad  certificando que la Escritura Pública Núm. 6  de Segregación, Inscripción Parcial, Liberación y Cesión  (Ap. De los Recurrentes XI-4  Docket 1087 -4) y otorgada el 3 de abril 2012,  haya sido calificada por el Registrador e inscrita en el Registro de la Propiedad.  El record ante este Honorable Tribunal no contiene evidencia alguna de que las escrituras hayan tenido acceso registral. La presentación de la escritura pública ante el Registro de la Propiedad no garantiza su inscripción.   En segundo lugar,   esta Honorable Curia al evaluar si un terreno cambió su naturaleza de dominio público a uno patrimonial, procedió a examinar la legislación existente que  fue definiendo el carácter del terreno en controversia a través de la historia. Solo así concluyó que mediante legislación en efecto había cambiado su naturaleza. *San Gerónimo Caribe Project, Inc., v. E.L.A.*  174 D.P.R. 518 (2008). En el caso ante nos, la legislación vigente  apunta a la naturaleza pública de las calles. No ha cambiado el derecho en este aspecto. Ciertamente la expresión unilateral del dueño del predio, aún elevada dicha expresión a escritura pública, no puede resultar en la desafectación alegada. Tampoco el que se ponga de acuerdo el dueño del predio y el Alcalde del Municipio  de Dorado. (Ver discusión sobre Naturaleza de la calles públicas en Puerto Rico- sección B).

La alegación de BCC de que ellos son "una comunidad privada" no les exime del claro lenguaje estatutario del régimen de Control de Acceso.  El control de acceso que la Asamblea Legislativa autorizó aplica al "uso público de las calles en urbanizaciones y comunidades residenciales públicas o privadas." 23 L.P.R.A § 64, Ley Núm. 21, 20 de  mayo 20, 1987, según enmendado por el art. 1 de la Ley Núm. 156, de 10 de agosto 1988) (énfasis nuestro). Dorado no cita precedente alguno en apoyo a su postura.  Más bien, alega que los derechos

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -8

La alegación de BCC de que ellos son "una comunidad privada" no les exime del claro lenguaje estatutario del régimen de Control de Acceso. El control de acceso que la Asamblea Legislativa autorizó aplica al "uso público de las calles en urbanizaciones y comunidades residenciales _públicas_ o _privadas_." 23 L.P.R.A § 64, Ley Núm. 21, 20 de mayo 20, 1987, según enmendado por el art. 1 de la Ley Núm. 156, de 10 de agosto 1988) (énfasis nuestro). Dorado no cita precedente alguno en apoyo a su postura. Más bien, alega que los derechos constitucionales deben ceder a las leyes sobre la propiedad.[2] Por ejemplo, Dorado admite que "[l]as condiciones restrictivas limitan los derechos propietarios del titular." Alegato de Municipio, pág. 6. No obstante, no toman en cuenta que tales disposiciones sólo "limitan las facultades de los futuros adquirentes." _Asociación de Vecinos de Villa Caparra, Inc. V. Iglesia Católica_, 117 D.P.R. 346, §2, pág. 1 (1986). No afectan el derecho a la libertad de expresión de terceros.

Aún de aceptar que Dorado y BCC pueden válidamente designar las calles de BCC como privadas, esto no puede tener el efecto de prohibir la expresión de ideas religiosas en las calles de BCC. Esto violenta el dictamen claro y reiterado de este Tribunal en protección de los derechos constitucionales: "En ningún momento se puede negar el acceso a las calles controladas para el ejercicio de actividades constitucionalmente protegidas, tales como: la libertad de expresión, libertad de asociación, libertad de culto, entre otras." _Luis A. Nieves y Otros v. AM Contractors, Inc. y Otros_, 166 D.P.R. 16 (2005).

Dorado no puede delegar una función pública a un ente privado sin que las limitaciones propias que tiene el estado para reglamentar le sean extensivas. _Evans_, supra. Emitir un permiso de control de acceso y después prohibir el acceso a las calles controladas bajo tal permiso es una acción estatal (state action) sujeto a las limitaciones constitucionales que le son extensivas al estado. Un acuerdo entre el municipio de Dorado y la urbanización, como alega tener BCC y el Municipio de Dorado, no puede interferir con el derecho

---

[2] En nuestro Código civil domina la idea de que el titular de un derecho de propiedad puede excluir a todo extraño del uso y disfrute de la cosa a la vez que reconoce limitaciones establecidas en ley ..."La propiedad concede derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en ley" Art. 280, Código Civil de PR.(31 L.P.R.A. §1111).

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -9

---

constitucional a la libre expresión religiosa.  *Marsh*, supra. Tampoco altera la naturaleza pública de las calles.

### B.  LA NATURALEZA DE LAS CALLES PÚBLICAS EN PUERTO RICO

#### 1. Derecho Vigente

En respuesta a la certificación ante esta curia, podemos decir sin ambigüedades que conforme al estado de derecho vigente, las calles en Puerto Rico son públicas por disposición expresa de ley. Las calles son públicas ya sea porque pertenecen al estado o por su uso público.[3] Desde el siglo XIX, cuando se hizo extensivo a Puerto Rico el Código Civil Español, se conceptuaron las calles como públicas. En *Asoc. Pro Control de Acceso vs Cardona*, supra, el Tribunal expreso:

"Las calles son bienes de dominio y usos públicos, independientemente de la jurisdicción bajo la cual se encuentren, sea esta municipal o estatal. Este carácter público de las calles se desprende de nuestro Código Civil, Arts. 255 y 256 (31 LPRA secs. 1024 y 1025) y se remonta a los tiempos de Las Partidas del rey Alfonso el Sabio." Citas omitidas, págs. 711-712.

Por su parte, la Ley Hipotecaria y del Registro de la Propiedad de Puerto Rico, según enmendada, en caso de desarrollo urbano de fincas dispone como sigue:

"En caso de cualquier desarrollo urbano de una finca, no podrá registrarse segregación alguna, sin que antes se presenten los documentos en que se segreguen las parcelas dedicadas al uso común o público, y en que se consigne la cabida del resto del área destinado a estos propósitos con arreglo al plano e informes aprobados en el Registro de Planos" Artículo 93 , 30 LPRA§ 2314.

Su lenguaje es claro. No es ambiguo. No requiere de interpretación.  Está en armonía con lo dispuesto en el Código Civil.

De forma similar y cónsono con lo anterior, el art. 101.1 del Reglamento Hipotecario especifica que:

"Serán segregados previamente a cualquier otras parcelas, aquellas que de acuerdo con el plano aprobado por las agencias gubernamentales concernidas, deban segregarse para ser destinadas al uso común o público. Se hará constar mediante nota marginal el área destinada a los mismos propósitos para cuya segregación no se hubiese exigido." Artículo 101.1 sección 870.377 aprobado el 13 de julio 1980.

---

[3] Ciertamente existen caminos privados dentro de una propiedad, que no son ni deben considerarse calles salvo que se utilicen para uso público, pero no son los objetos de consideración en este caso.

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -10

Contrario a lo alegado por el Municipio de Dorado, el claro lenguaje estatutario antes citado, **provee un requerimiento legal**. No se trata de una facultad o prerrogativa del desarrollador o municipio porque el cumplimiento de las leyes no debe dejarse al arbitrio de las partes. El Municipio de Dorado cita *Soto Santiago v. Monacillos Center*, 2011 TA 1274 del 29 de abril 2011, en apoyo a su posición de que el estado no tiene que condicionar la aprobación de un proyecto a la transferencia gratuita de propiedad para uso público. Sin embargo dicha sentencia es distinguible en los hechos al caso de autos y apoya la posición que aquí adelantamos. En *Soto Santiago*, supra se trataba de un proyecto comercial; no un proyecto urbano de residencias por lo que no aplicaba la Ley de Control de Acceso. El Tribunal de Apelaciones resolvió que no había para ese tipo de proyecto requisito en ley que obligara al dueño de la propiedad segregada (para fines comerciales de desarrollo no destinado a residencias) construir y dedicar a uso público vías y derecho de paso a su entero costo gravamen. En ese contexto fáctico es que el tribunal se expresa que no tiene que condicionarse a la dedicación a uso público para que el gobierno lo apruebe. Claramente una lectura a la Ley Hipotecaria y su reglamento, como la Ley de Control de Acceso hacen evidente que ambas contienen un requerimiento en ley de segregar parcelas para uso público, y mantener el carácter público de las calles de un desarrollo urbano como el de BCC. Art. 93 Ley Hipotecaria, 30 L.P.R.A. §2314;*Caquías Mendoza v. Aso. de Residentes Mansiones de Rí Piedras*, 134 D.P.R. 181 (1993).

Finalmente, la Ley de Control de Acceso, *supra*, sostiene que la restricción de acceso no altera el carácter público de las calles y aceras. Por ello, en 1992 la Asamblea Legislativa de Puerto Rico, al modificar la Ley de Control de Acceso para permitir que los municipios participaran en el proceso, reiteró que el acceso podía controlarse en "urbanizaciones y comunidades residenciales, públicas o privadas." 23 L.P.R.A. § 64, § 1 (énfasis nuestro). De modo que, llámese a una urbanización de "pública" o "privada," el punto relevante bajo la Ley Núm. 21 es que el acceso sólo puede controlarse, no prohibirse.

Incluso, irrespectivo de la titularidad de las calles, el ordenamiento legal en Puerto Rico establece que los terrenos donde ubican las calles o carreteras y plazas públicas "que

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -11

por su naturaleza son susceptibles de propiedad particular, pierden esa cualidad como consecuencia de la aplicación que de ellas se hace para fines incompatibles con la propiedad privada...". Art. 274 Código Civil de Puerto Rico (31 LPRA sec. 1082).

Si alguna duda existe de que las calles en Puerto Rico son públicas ha sido disipada jurisprudencialmente. Véanse: *Asoc. Pro Control de Acceso v Cardona*, supra; *Caquías Mendoza*, supra,; *Armstrong vs ELA*, 97 DPR 588 (1969); *Gobierno de la Capital v Consejo Ejecutivo*, 63 DPR 434 (1944); *Saldaña v El Consejo Municipio*, 15 DPR 37 (1909).

**2. Régimen de Control de Acceso preserva carácter público de las calles.**

Al dictaminar sobre el régimen de Control de Acceso, este Tribunal vez tras vez ha protegido el derecho de los ciudadanos a tener acceso a las calles residenciales. En su primera expresión sobre el régimen de control de acceso, este Tribunal resolvió que "[e]l concepto de control de acceso implica que se preserva *la naturaleza pública de las calles residenciales*". *Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedras*, 134 D.P.R. 181, (1993) (énfasis en el original). Además, este Tribunal reiteró que "las calles son bienes de uso público y que en el pasado, a los efectos del ejercicio de la libertad de expresión, las hemos considerado foros públicos." *Id.*, pág. 187. De conformidad, el Tribunal falló que "el permiso que otorga un municipio a una asociación de residentes para controlar el acceso a las calles residenciales de su urbanización *debe interpretarse e implantarse de conformidad con la naturaleza pública de esas vías." Id.*, págs. 207-208 (énfasis en el original). Por eso, al solicitar y aceptar el permiso de control de acceso, BCC reconoció en cuanto a sus calles, que "a los efectos del ejercicio de la libertad de expresión, las hemos considerado foros públicos." *Id.*, pág. 187.

En la siguiente ocasión que este Honorable Tribunal se expresó sobre el régimen de Control de Acceso, este no cedió terreno en su defensa de la libertad de expresión: "Recalcamos, la ley no permite que se impida indiscriminadamente el acceso". *Asoc. Pro Control de Acceso Calle Maracaibo*, pág. 28. Resolvió además que "si algún reglamento

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -12

aprobado por alguna asociación de residentes infringe derechos constitucionalmente protegidos, tal reglamento será invalidado." *Id.*, págs. 27-28.

De igual forma, el Tribunal Federal expresó con elocuencia lo que por mucho tiempo ha sido la normativa en Puerto Rico sobre las calles y carreteras:

> La Asamblea Legislativa de Puerto Rico instituyó el Código Civil, el cual requiere que todas las calles y carreteras sean públicas y permanezcan disponibles para el uso público. Tales disposiciones han tenido vigencia desde la versión de 1930 del Código Civil de Puerto Rico. El mismo garantiza que todas las carreteras de la Isla se mantengan y permanezcan abiertas para uso público. ... De modo que la ley de Puerto Rico requiere que todas las carreteras de la Isla sean públicas. (Docket Núm. 1074, pág. 9) (traducción nuestra).

De lo anterior tan solo puede colegirse que el estado de Derecho actual en Puerto Rico es que las calles son de uso público y, por ende son públicas.

Al alegar que las calles de BCC no son públicas, Dorado pasa por alto el hecho de que las calles y aceras de Puerto Rico son bienes para uso y dominio público. 31 L.P.R.A. §§ 1024 y 1025; véase *Saldaña et al. v. El Consejo Municipal de San Juan, et al.*, 15 D.P.R. 37, 8 (1909); ("[L]as calles, aceras, [y] plazas de la ciudad ... han sido destinadas al uso de los habitantes de la ciudad, y todos y cada uno de ellos desde el Gobernador, en su palacio, hasta el limosnero en su choza, tienen derecho al uso libre y continuado de las mismas.")

**3. Acto ultra vires de Dorado-** El intento del Municipio de Dorado de deshacer la naturaleza pública de las calles en este caso de BCC es acto *ultra vires*. En la medida que el Municipio de Dorado ha consentido y promovido que las calles de BCC son privadas, y que están exentas de cumplir con las órdenes del Tribunal Federal, como argumentan ante este Honorable Tribunal actúan sin autoridad legítima para hacerlo.

> "Cualquier acto del consejo de la ciudad por el que se trate de autorizar la construcción de un edificio sobre una de las aceras de esta ciudad es ultra vires, nulo y sin ningún valor; y cualquier ciudadano puede recurrir á los tribunales para que se le proteja contra un acto tan ilegal." *Id.*, pág. 8.

La actuación *ultra vires* del Municipio de Dorado no puede ser sancionado por este Tribunal. De hacerlo, tendría como consecuencia permitir que otras urbanizaciones y municipios siguieran el mismo curso que ha optado seguir el Municipio de Dorado evadiendo la responsabilidad de respetar la garantía constitucional de la libertad de

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -13

expresión. Fomentaría y nada impediría que los municipios concedan permiso de control de acceso aceptando condiciones contrarias a derecho, como la involucrada en el caso de BCC. Esto animaría a otras urbanizaciones que han recibido permisos de control de acceso a reclamar que estas también son "privadas", o alegar que pueden negar el acceso puesto que, aunque sus comunidades llevan años de establecidas, sus carreteras no han sido transferidas al municipio. (Véase Docket Núm. 1132, pág. 2, que cita Docket Núm. 1087, pág. 5, párrafo 16) (traducción nuestra); *véase también* *Omega Development Corp. v. Asociación de Propietarias de Vistamar Marina, Inc.*, 2000 T.C.A. 1079, 9 ("Tampoco era necesario que el desarrollador destinara la calle Andalucía como fin público pues una vez construida la urbanización las calles advienen públicas.") Tal proceder frustraría el interés público que tanto este Tribunal como la Asamblea Legislativa han expresado. Permitir que los municipios y las urbanizaciones o desarrolladores de proyectos de desarrollo urbano acuerden condiciones contrarias a lo dispuesto en la Ley de Control de Acceso, el Código Civil y la Ley Hipotecaria y su reglamento puede desembocar en un descontrol en la planificación urbana y afectar adversamente la capacidad central de planificación de terrenos en Puerto Rico. [4]

## V. CONCLUSIÓN Y SÚPLICA:

Darle validez a una delegación *sui generis* del poder del estado a un desarrollador de un proyecto urbano de residencias, para excluirlo de los requisitos aplicables al estado al ejercer dicha función, **es un precedente sumamente peligroso** que atenta contra el ordenamiento vigente y la política pública de planificación uniforme. De conformidad con las leyes, reglamentos y jurisprudencia citada, los Recurridos respetuosamente solicitan que el Tribunal Honorable conteste en la negativa la interrogante, "Permiten las leyes de Puerto Rico la existencia de carreteras privadas?". Corresponde a la legislatura, y no a esta Curia

---

[4] Los condominios y hoteles turísticos no serán afectados por el dictamen del Tribunal sobre la interrogante de si las urbanizaciones que reciben permiso de Control de Acceso tienen la obligación de proveer acceso a ciudadanos que desean ejercer su libertad de expresión.

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -14

cambiar el estado de derecho vigente, si se ha de permitir o no que existan calles privadas en desarrollos de proyectos urbanos, particularmente bajo la Ley de Control de Acceso y bajo qué circunstancias y condiciones han de regirse.

Los Recurridos también respetuosamente solicitan que el Tribunal dictamine que, las calles son de uso público independientemente de su titularidad, sujetas a las restricciones del estado y por ende no se puede impedir la libertad de expresión sobre las calles residenciales.

**RESPETUOSAMENTE SOMETIDO,**

En San Juan, Puerto Rico a 4 de noviembre de 2013.

## VI. CERTIFICACIÓN

En esta misma fecha, copia fiel y exacta de esta Moción se ha enviado por correo regular a: **Lcdo. Héctor Rivera Cruz**, P.O. Box 9023954, Old San Juan Station, San Juan, PR 00902-3954; **Lcdo. IVÁN PASARELL JOVÉ**, P.O. Box 9021612,San Juan, PR 00902-1612;**LCDO. CLAUDIO ALIFF-ORTIZ**, ALB Plaza #16,Carr. 199 Suite 400, Guaynabo, PR 00969; **LCDO. MICHAEL C. MCCALL**, P.O. Box 362634, San Juan, PR 00936-2634; **LCDO. LUIS E. PABÓN-ROCA** y **LCDO. CLARISA SOLÁ-GÓMEZ**, P.O. Box 11397,Fernández Juncos Station,San Juan, PR 00910-2497;**LCDO. PEDRO R. VÁZQUEZ, III**, Office, 405 Esmeralda, Ave. Suite 2 PMB 153,Guaynabo, PR 00969; **LCDO. RAFAEL E. RIVERA-SÁNCHEZ**; P.O. Box 191884,San Juan, PR 00919-1884; **LCDO. EDGAR HERNÁNDEZ-SÁNCHEZ**, P.O. Box 364966, San Juan, PR 00936-4966; **LCDA. ROSA M. CRUZ-NIEMIEC**, P.O. Box 195498,San Juan, PR 00919-5498;**LCDO. ROBERT MILLÁN**,Calle San José #252,San Juan, PR 00901;**LCDA. GISELLE M. MARTÍNEZ-VELÁZQUEZ**, Urb. El Cerezal, 1684 Calle Paraná, San Juan, PR 00926. **UNITED STATES DISTRICT COURT OF PUERTO RICO**, Edif. Federal Ave. Chardón, Suite 150, San Juan PR 00918-1767.

En San Juan Puerto Rico a 4 de noviembre 2013.

NORA VARGAS-ACOSTA
Edificio First Federal

Argumento de Watchtower Bible and Tract Society of New York, Inc. y Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc.

Página -15

1056 Avenida Muñoz Rivera, Suite 1004
Rio Piedras, PR  00927-5026
Tels. 787-751-7485
787-525-5514
Fax. 787-751-7485
nvargasacosta@onelinkpr.net

NORA VARGAS ACOSTA
RUA Núm. 7824

PAUL D. POLIDORO*
Watchtower Legal Department
100 Watchtower Drive
Patterson, NY  12563
Tel. 845-306-1000
Fax. 845-306-0709
ppolidor@jw.org

PAUL D. POLIDORO
*Solicitud de admisión de cortesía pendiente ante este Tribunal