# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**WATCHTOWER BIBLE TRACT SOCIETY OF NEW YORK, INC., et al.,**

    **Plaintiffs,**

    **v.**

**MUNICIPALITY OF SANTA ISABEL, et al.,**

    **Defendants.**

**CASE NO. 04-1452 (GAG)**

## **OPINION AND ORDER**

On January 22, 2015 Magistrate Judge Silvia Carreño Coll held a hearing on Plaintiffs' Motion for Contempt against the Municipality of Dorado and thereafter issued the undersigned a Report and Recommendation ("R&R").  (See Docket No. 1444.)

After evaluating the evidence presented at the hearing, Magistrate Judge Carreño Coll found that, on five (5) occasions, the Municipality of Dorado failed to ensure that Jehovah's Witnesses, who were attempting to practice door-to-door ministry in Sabanera de Dorado, a manned gated urbanization, were able to do so within its bounds.  Docket No. 1444 at 22.  Consequently, Magistrate Judge Carreño Coll recommended that, pursuant to 28 U.S.C. § 636(e)(6), Dorado be held in contempt and fined $1,000 for each instance of non-compliance, for a total of $5,000.  Id. at 23.  Magistrate Judge Carreño Coll further recommended that Dorado reimburse Plaintiffs for their attorney's fees in the amount of $3,000.  Id.  Furthermore, in an effort to abate Dorado's

1

**Civil No. 04-1452 (GAG)**

repeated non-compliance, Magistrate Judge Carreño Coll suggested that Dorado's action plan be amended to provide stronger compliance mechanisms to ensure future compliance with the court's mandates. (Id. at 19.) This recommendation provided guidelines for the amendments to the action plan that Magistrate Judge Carreño Coll deemed necessary. (Id.)

In light of Dorado's recurrent incidents of non-compliance with Sabanera, the undersigned agrees with Magistrate Judge Carreño Coll's recommendation that Dorado's action plan needs to be updated. Therefore, after careful consideration, the court **ADOPTS** Magistrate Judge Carreño Coll's R&R at Docket No. 1444 a follows.

**A.     Dorado's Opposition to the Magistrate Judge's R&R (Docket No. 1453)**

The Municipality of Dorado moves the court to reconsider Magistrate Judge Carreño Coll's contempt findings. (See Docket No. 1453.) In an effort to justify its non-compliance, Dorado emphasizes some of the issues that have come up in Sabanera, such as Jehovah's Witnesses being granted access to the streets, but not allowed to park their cars on the streets or knock on doors, particularly focusing on the incidents that took place on January 15th and 16th of this year. (Docket No. 1453 ¶¶ 14, 16.) Rather than rehash these facts, the court makes reference to Magistrate Judge Carreño Coll's detailed account of these incidents. (See Docket No. 1444 at 12-19.) Dorado further tries to vindicate its actions by describing the efforts by Dorado Municipal Police in managing the situation with Sabanera's administrator and other officials, instructing them about the law and Plaintiffs' First Amendment rights. (Id.) However, the evidence presented demonstrates that these efforts led to no avail. (See id.) After the Police Commissioner's intervention, Dorado's counsel concedes that he was later informed that Sabanera had continued prohibiting Jehovah's Witnesses from knocking on doors. (Docket No. 1453 ¶ 15.) Finally, on account of its efforts, Dorado posits that it "had no other power over Sabanera to deal with this

situation other than secure access and instruct the parties' about their rights." (Id. ¶ 17.)

The court is not persuaded by Dorado's argument that its hands were tied. It seems as though the Municipality does not want to acknowledge its duty to protect Jehovah's Witnesses' First Amendment Rights and what they entail. It is well-settled law that the Municipalities' duty goes beyond the urbanization's gates. **As incidents like these show no signs of disappearing, the undersigned takes this opportunity to clarify, once again, for the Municipality of Dorado, the other Defendant Municipalities and urbanizations, that Jehovah's Witnesses have the right to freely enter all urbanizations and to freely practice door-to-door ministry and that the Municipalities have an ongoing duty to ensure that Plaintiffs' First Amendment rights are respected.**

The undersigned is astounded that, after more than a decade of litigation, a clearly established principle by the United States Supreme Court is still being questioned by Defendants. The case law governing the issue of Jehovah's Witnesses' First Amendment right to engage in door-to-door ministry is clear. (See Docket No. 904.) **Not only do Jehovah's Witnesses have the right to enter urbanizations, but they also have the right ring doorbells and knock on household doors, even if they must enter private property to do so.** The U.S. Supreme Court has repeatedly upheld this right in previous cases dealing with Jehovah's Witnesses. See Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton, 536 U.S. 150, 161 (2002) (holding that "[f]or over 50 years, the Court has invalidated restrictions on door-to-door canvassing and pamphleteering") (citing Hynes v. Mayor and Council of Oradell, 425 U.S. 610 (1976); Martin v. City of Struthers, 319 U.S. 141 (1943); Murdock v. Pennsylvania, 319 U.S. 105 (1943); Jamison v. Texas, 318 U.S. 413 (1943); Cantwell v. Connecticut, 310 U.S. 296; Schneider v. State (Town of Irvington), 308 U.S. 147 (1939); Lovell v. City of Griffin, 303 U.S. 444 (1938)).

The act of door-to-door canvassing and pamphleteering is mandated by their religion.

> Jehovah's Witnesses 'claim to follow the example of Paul, teaching 'publickly, and from house to house.' Acts 20:20. They take literally the mandate of the Scriptures, 'Go ye into all the world, and preach the gospel to every creature.' Mark 16:15. In doing so they believe that they are obeying a commandment of God.' Moreover, because they lack significant financial resources, the ability of the Witnesses to proselytize is seriously diminished by regulations that burden their efforts to canvass door-to-door.

Vill. of Stratton, 536 U.S. at 161 (quoting Murdock v. Pennsylvania, 319 U.S. 105, 108 (1943)).

Earlier in this litigation this court recognized that the grant of a Controlled Access Law ("CAL") permit to an urbanization "does not abrogate the municipality's obligation to ensure that public streets remain available for public use." Watchtower Bible & Tract Soc'y v. Sanchez-Ramos, 647 F. Supp. 2d 103, 109 (D.P.R. 2009).  Thereafter, the First Circuit affirmed this particular finding and further stated that:

> [I]n administering the CAL, each municipality has an ongoing duty to ensure that the First Amendment is respected in the urbanizations founded under its auspices. In addition, the legislature has implanted teeth in this grant of authority: the CAL gives municipalities the power to impose sanctions on a wayward urbanization even after a permit is issued and recorded.

Watchtower Bible and Tract Soc'y of New York v. Municipality of San Juan, et al., 773 F.3d 1 (1st Cir. 2014) (citing P.R. LAWS ANN. tit. 23, § 64d).  The Municipalities' ongoing duty requires not only that Jehovah's Witnesses are secured access to public streets but also extends to ensure that Jehovah's Witnesses' First Amendment rights are guaranteed, namely, their right to door-to-door canvasing.  In a situation such as the one transpired at Sabanera, the Municipality shields behind the fact that street access was granted, but chooses to ignore the fact that to door-to-door canvasing was prohibited.  As to this issue, Magistrate Judge Carreño Coll stated:

4

**Civil No. 04-1452 (GAG)**

> Dorado still does not understand the important First Amendment concerns that have animated this case. The Jehovah's Witnesses' purpose in bringing this suit is not simply to walk silently down the streets of Puerto Rico's controlled-access communities; rather, they brought this suit so as to be free to engage in door-to-door ministry, an important tenet of their faith.

(Docket 1444 at 8.) Because Dorado has the duty to ensure Sabanera grants full access to Jehovah's Witnesses, including the public use of the streets, the actions taken by Dorado during the January, 2015 incidents evidences that it failed to take other actions it had in its power. The CAL provides that Municipalities with the authority to issue permits also have the authority to revoke CAL permits as a sanction for a violation of the CAL. Dorado, as well as every other Municipal Defendant in this case, has the ongoing duty to ensure Plaintiffs' First Amendment rights are guaranteed. Yet, Dorado did not revoke Sabanera's CAL permits; therefore it had other actions it had available but chose to not pursue them. Thus, contrary to its argument, Dorado's hands were not tied. Dorado failed to carry out its ongoing duty to protect Plaintiffs' rights. Thus, the undersigned, in agreement with the Magistrate Judge's recommendation, finds that on the five occasions in question, Dorado failed to uphold this court's orders. The court holds Dorado in contempt in the five instances. Taking into consideration the Municipality's precarious fiscal condition, the court, within its discretion, reduces the recommended fine to $250 per violation. **Thus, Dorado is hereby imposed a total of $1,250 in contempt sanctions.** However, the court notes that any future violation will entail the $1,000 fine, as recommended by Judge Carreno Coll. Moreover, Dorado is also ordered to pay the recommended attorneys' fees.

**B.     Proposed Amended Action Plan at Docket No. 1459**

As noted above, Magistrate Judge Carreño Coll suggested Dorado's original action plan should be amended and updated to provide stronger compliance mechanisms that abide with the

court's mandate and governing law. She suggested the following modifications:

> 1. Require—not urge—manned urbanizations within the municipality to grant Jehovah's Witnesses access to the urbanizations. It must make explicit the fact that "access" means more than physical entry; it means the right to engage in door-to-door ministry. It must also make clear urbanizations may not impose conditions on the Jehovah's Witnesses outside of those found in orders from this Court or the First Circuit.
> 2. Implement a sanctions regime under these auspices of the municipal administrator, by which the municipality will punish urbanizations that fail to provide Plaintiffs with full access. The sanctions regime may include monetary sanctions, but it must include the revocation of controlled access permits for urbanizations that repeatedly deny Plaintiffs access.
> 3. Provide a contact number by which Jehovah's Witnesses can notify the municipal police that they have been denied access to an urbanization, and obligate the municipal police to promptly respond. Further, responding municipal police officers must actually ensure that the Jehovah's Witnesses are granted full access, including, if necessary, by locking gates in an open position.
> 4. Require the police to make reports of all such calls by Jehovah's Witnesses, and to forward such reports to a designated official within the municipal government.
> The theme running through these requirements is that the Court should not need to be involved in the routine disciplining of intransigent urbanizations. Under the Court's judgments and orders, that job is Dorado's, and it should be performed without this Court's intervention.

(Docket No. 1444 19-21.) As instructed by Magistrate Judge Carreño Coll's R&R, Dorado submitted a second draft of its proposed Amended Action Plan. (See Docket No. 1459.) The court has reviewed the proposed amendments and is unsatisfied. The undersigned finds that the proposed amendments, particularly the imposition of a "sanctions regime," fail to improve Dorado's compliance mechanisms to the desired level. The proposed action plan lacks sufficient detail to effectively and immediately tackle and prevent Dorado's non-compliance. **Accordingly, the action plan should be amended once again and submitted for further evaluation by the court.**

**Civil No. 04-1452 (GAG)**

First, the Municipality shall devise a detailed permit revocation process, pursuant to section 64d of the CAL.[1] Dorado's poorly developed idea that a permit revocation process will exist does not satisfy the court. Supposing this proposed plan was approved by the court, and tomorrow an incident arises in which Sabanera, or any other urbanization, denies Jehovah's Witnesses' access and exercise of their First Amendment rights, Dorado would still be unable to flourishingly carry out the permit revocation process without undue delay. Moreover, under the CAL, sanctions for violating its dispositions may not exceed $250 per violation. (See id.)

Second, the action plan must include a detailed explanation that Jehovah's Witnesses' door-to-door ministry is protected under the First Amendment and, therefore, they must be allowed to exercise their right in public roads, as articulated above.

**Dorado shall promptly refile an amended action plan in accordance with this order by**

---

[1] Section 64d of the CAL reads as follows:
Any violation or noncompliance with the requirements established above shall bring about the automatic revocation of the authorization, except when the permit or authorization has been recorded in the Property Registry of Puerto Rico, as authorized in § 64d-1 of this title. The expenses of dismantling or removing the access control facilities shall be the responsibility of and be defrayed by the residents and proprietors of the urbanization or community concerned who favored the control of the access.
Once the permit or authorization is registered in the Property Registry of Puerto Rico the authorization may not be revoked, but the municipality where the development of segregation is located may impose sanctions, if there is a municipal ordinance to such effects, on any natural or juridical person who is liable for violating or failing to comply with the requirements established above. When the permit or authorization has been requested by the urbanizer, developer or constructor, they shall be liable for such noncompliance or infractions as long as not more than sixty-five percent (65%) of the residences, lots or plots that make up the urbanization, subdivision or simple segregation, have been sold and delivered. When a council, board or residents' association has been constituted, it shall be liable for noncompliance or infraction of the provisions of § 64c of this title and shall keep the access control under its authority, to administer and maintain it.
The municipal governments of Puerto Rico shall have the power to approve those municipal ordinances that are needed to sanction violations of the provisions of §§ 64-64h of this title or the regulations promulgated hereunder to a maximum of two hundred and fifty dollars ($250) for each violation. Each day that the same violation is committed shall be deemed as a separate violation.

P.R. LAWS ANN. tit. 23, § 64d.

**May 20, 2015 at noon.**

In conclusion, after careful consideration of the facts and pertinent law, the court **ADOPTS** Magistrate Judge Carreño Coll's R&R at Docket No. 1444 and orders Dorado to refile an amended action plan.

Dorado shall deposit the sanctions imposed today into an escrow account and file an informative motion stating the funds have been deposited in such an account no later than **April 30, 2015.**

The sanctions imposed today will be be set aside and destined to be used only as ordered by this court.  Dorado shall add the sanctions imposed today to the funds set aside for the sanctions imposed by this court on October 23, 2013. (See Docket No. 1264).

S**O ORDERED.**

In San Juan, Puerto Rico this 20th day of April, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

8